Clyde STARRETT, Jerry L. Cisar, Vicki Rae Buffington, and Susan Kay Sorge, Plaintiffs and Appellees,

v.

Louise TYON (Cisar), Defendant and Appellant.

No. 15215.

Supreme Court of South Dakota.

Considered on Briefs May 21, 1986.

Decided July 30, 1986.

Bryce A. Flint of Jackley & Flint, Sturgis, for plaintiffs and appellees.

Charles A. Wolsky of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for defendant and appellant.

FOSHEIM, Chief Justice.

This appeal is from a summary judgment which in effect declared the marriage of Frank A. Cisar and Louise Tyon to be void. Louise Tyon appeals. We reverse.

A marriage license was issued to Frank A. Cisar and Louise Tyon by the Meade County Treasurer on April 12, 1985. The marriage was solemnized before the Chaplain at Ft. Meade on May 14, 1985, and the parties thereafter lived together as husband and wife until June 3, 1985, when Frank A. Cisar died. When proceedings were commenced to administer the estate of Frank A. Cisar, his children became aware that a will, executed prior to this marriage, would be invalid under SDCL

29–3–7.[1] They brought this action to have the marriage declared void because it was solemnized more than 20 days after the marriage license was issued, contrary to SDCL 25–1–24.

The validity of a marriage is governed by statutes which are to be construed in favor of validation even when the marriage was not entered into according to statutory requirements, unless the statutes cannot fairly be so construed. *In re Svendsen's Estate*, 37 S.D. 353, 158 N.W. 410 (1916).

SDCL ch. 25–1 defines marriage, specifies the requirements for perfecting the relationship, and declares certain marriages, such as incestuous (SDCL 25–1–6), and bigamous (SDCL 25–1–8) marriages to be void. SDCL 25–1–10 states that previous to any marriage within this state, a license for that purpose shall be obtained from the county treasurer. SDCL 25–1–24 determines that marriage *licenses* become void and of no effect unless the marriage is solemnized within 20 days after the license is issued. However, it is significant that while incestuous and bigamous marriages are expressly declared void, no statute determines a *marriage* solemnized without a valid license to be void. SDCL 25–1–31 provides, regarding a marriage solemnized without the required license, only that the persons so married and all those aiding in such marriage are guilty of a misdemeanor. However, a marriage is valid notwithstanding a statute which imposes a criminal penalty upon those who fail to comply with solemnizing requirements. *Svendsen*, 158 N.W. at 413; 61 A.L.R.2d § 2[a] p. 849; 55 C.J.S. *Marriages* § 7. It is also noteworthy that instead of voiding the union, SDCL 25–1–31 speaks of those persons joined without a valid license as being "so married." That language assumes the existence of a valid marriage. *Svendsen*, 158 N.W. at 413. Accordingly, a fair construc-

1. SDCL 29–3–7 provides:

   If a person, after making a will, marries, and the spouse survives such testator or testatrix, the will is revoked, unless provision has been made for the surviving spouse by marriage contract, or unless the surviving spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received.

   *See Griffing v. Gislason,* 21 S.D. 56, 109 N.W. 646 (1906).

tion of the marriage statutes indicates a legislative intent that the failure to solemnize a marriage within 20 days of receiving a license voids the license, but not the marriage.

In *Svendsen,* this court held that a marriage is valid regardless of the failure to conform to statutory requirements looking to the solemnization, authentication and recording of the marriage, because such statutes are not mandatory but only directory in nature. This was our language: "License merely looks to the authentication of the marriage. We conclude that a marriage license is not an essential to a valid marriage in this State." *Id.* at 413. The trial court distinguished *Svendsen* on the basis that common-law marriages were then recognized. However, the license aspect of the decision did not rest on the finding of a common-law marriage and the rationale applied is equally applicable to a solemnized marriage.

In *Lessert v. Lessert,* 64 S.D. 3, 263 N.W. 559 (1935), the effect of issuing a marriage license to two minors who failed to obtain the statutorily required consent of their parents was considered. We concluded in *Lessert* that the consent of the parents is primarily concerned with the obtaining of a license, and referred to *Svendsen* to reaffirm the proposition that requiring a marriage license is directory only. We now conclude that the same reasoning applies to an expired license.

The order granting the motion for summary judgment is reversed.

MORGAN, WUEST, and SABERS, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Although I agree that in this case, the marriage should not be voided because it was solemnized more than 20 days after the marriage license was issued, at least the parties obtained a marriage license and went through a marriage ceremony and they believed, in all good faith, that they were husband and wife. This was a technical violation of a statute. There is the letter of the law and the spirit of the law. Thus, I would not void this marriage and I join in the decision of this Court.

However, I would modify the 1916 holding of *Svendsen,* as common-law marriages were recognized in that era, but there is a statute which has abolished common-law marriage in this state, effective July 1, 1959. SDCL 25–1–29. A marriage license and a ceremony are favored in the law and the *Svendsen* language is too strong for me. I repeat that the two principals had a marriage license in this case. In the *Svendsen* case, the two principals did not have a marriage license. SDCL 25–1–10 requires that previous to any marriage, a license must be obtained from the county treasurer.

A survival of the Judeo-Christian religion depends, in part, upon the sacrament of marriage. Marriage "is the foundation of the family and of society, without which there would be neither civilization nor progress." *Maynard v. Hill,* 125 U.S. 190, 211, 8 S.Ct. 723, 729, 31 L.Ed. 654, 659 (1888). *Maynard* was cited with approval as recently as 1978, in *Zablocki v. Redhail,* 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618, 629 (1978). *See also,* G. Douthwaite, *Unmarried Couples and the Law* § 1.2 (1979). Graham Douthwaite was a Professor of Law at the University of Santa Clara School of Law and his book is a scholarly treatise on the legal ramifications of parties living together and not being married. Marriage then, as a social institution, is favored by the law and public policy. 52 Am.Jur.2d *Marriage* § 3 (1970). Marriage licenses and a ceremony, which record and formalize the marriage, should therefore be encouraged by the law. I remind the reader that at the time of the *Svendsen* decision, when it was concluded that a marriage "license is not an essential to a valid marriage in this state[,]" *Svendsen,* 37 S.D. at 367, 158 N.W. at 413, common-law marriages were recognized in South Dakota.