Unified Judicial System

 

 
 
Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
ACCOUNTS MANAGEMENT, INC.,
Plaintiff and Appellee,
v.
CLAUDIA LITCHFIELD,
f/k/a Claudia Klusman,
Defendant and Appellant.
South Dakota Supreme Court
Appeal from the Seventh Judicial Circuit, Pennington County, SD
Hon. John E. Fitzgerald Jr., Judge
#20129--Affirmed
Robert R. Nelson, Sioux Falls, SD
Attorney for Plaintiff and Appellee.
Kenneth E. Jasper, Jasper Law Offices, Rapid City, SD
Attorney for Defendant and Appellant.
Considered on Briefs Feb 18, 1998; Opinion Filed Mar 11, 1998
KONENKAMP, Justice.
[Â¶1] Today we must decide whether failure to record a marriage license invalidates a marriage. A widow denies responsibility for her deceased husband's medical bills contending her marriage was void for lack of recording with the register of deeds. Because we construe our licensing statutes to favor validation of marriages even when a statutory formality was overlooked, we declare the marriage valid and conclude our statutes make her financially responsible for his medical care. Her debt is affirmed.
FACTS 
[Â¶2] Fredrick Klusman and Claudia Caswell submitted an application for a marriage license to the Pennington County Register of Deeds on December 20, 1984. They were married four days later by an ordained Presbyterian minister in the company of a few friends and relatives. On October 14, 1986, Fredrick was in Mitchell, South Dakota on a business trip when he suffered a severe heart attack. Emergency personnel transported him to St. Joseph Hospital. Claudia signed, as his wife, an "Admission Consent Form" and an "Authorization for Medical and/or Surgical Treatment." Fredrick was in the intensive care unit for seven days. As a result of his heart attack, Fredrick's brain was deprived of oxygen for eight to ten minutes resulting in severe and irreversible brain damage. Claudia obtained guardianship of his person and assumed responsibility for all his affairs until his death from cancer in 1989.
[Â¶3] The medical bill at St. Joseph totaled $14,170. Claudia made consistent, monthly payments for nearly eight years. Distressed the balance was not decreasing as quickly as she anticipated, she stopped paying in August 1994. Accounts Management, Inc. (AMI), the successor in interest to the balance owed St. Joseph, brought suit for the remaining amount. Following a hearing, the circuit court granted AMI's motion for summary judgment. Claudia appeals believing genuine issues of fact persist on whether she has any obligation to pay Fredrick's medical bills because an unrecorded marriage is invalid, there is no official proof she was ever legally married to him, and his medical expenses were not "necessaries."(1) 
STANDARD OF REVIEW 
[Â¶4] The rules for reviewing summary judgments are too well established to recite in detail here. See SDCL 15-6-56(c). Generally, summary judgment should never be viewed as "a disfavored procedural shortcut, but rather as an integral part of [our rules] as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 US 317, 327, 106 SCt 2548, 2555, 91 LEd2d 265, 276 (1986) (citations omitted). If any legal basis exists to support the circuit court's ruling, affirmance is proper. Goepfert v. Filler, 1997 SD 56, Â¶4, 563 NW2d 140, 142 (citing Petersen v. Dacy, 1996 SD 72, Â¶5, 550 NW2d 91, 92).
ANALYSIS AND DECISION 
1. Failure to Record Marriage License 
[Â¶5] After their marriage ceremony, Claudia evidently believed she was married to Fredrick. Now she feels the marriage should be deemed void as the license was never recorded. Our law makes recording mandatory. "After performing the ceremony, the person solemnizing the marriage shall deliver the marriage certificate to the persons married and return, within ten days, the license and record of marriage to the county register of deeds." SDCL 25-1-35. Then, the "register of deeds shall maintain ... records of marriages solemnized in that register's county." SDCL 25-1-37. With the use of the word "shall" in SDCL 25-1-35 and -37, was it the Legislature's intent to require recording before a marriage is legitimized?
[Â¶6] We aspire to preserve the sanctity of marriage and family, so when the validity of a marital union is challenged, we examine the pertinent legislative enactments with respectful care. SDCL ch. 25-1 (governing conditions for marriage). See Carabetta v. Carabetta, 438 A2d 109, 111 (Conn 1980). "The cardinal principle of judicial construction is to save and not to destroy." Bloemer v. Turner, 137 SW2d 387, 392 (Ky 1939). These statutes should be construed to favor validation even when full compliance with statutory formalities may be deficient. Starrett v. Tyon, 392 NW2d 94, 95 (SD 1986); Carabetta, 438 A2d at 112 (a marriage remains valid "[i]n the absence of express language in the governing statute declaring a marriage void for failure to observe a statutory requirement"); 52 AmJur2d Marriage Â§38 (1970) ("Compliance with license statutes is not generally essential to the validity of a marriage, at least in the absence of statutory provisions making it so essential ... ."). Only two states, Alaska and Oklahoma, have statutes which appear to provide that noncompliance with licensing requirements will render a marriage invalid.(2)  See Lynn D. Wardle et al., Contemporary Family Law, Â§3.09, at 47 (1988).
[Â¶7] Our law defines marriage as "consent" followed by "solemnization." SDCL 25-1-1. Although SDCL 25-1-29 provides that a "marriage must be solemnized, authenticated, and recorded as provided in this chapter," no statute makes recordation essential to legalize a marriage. Rather than the newlyweds, SDCL 25-1-35 commands "the person solemnizing the marriage" to deliver the license to the register of deeds and SDCL 25-1-37 specifically directs the register of deeds to "maintain ... records of marriages solemnized in that register's county." Neither of these statutes require action or compliance by the parties to the marriage. With this in mind, we cannot imagine our legislators intended that the mere act of recording would be necessary to "perfect" the marital relationship as if akin to a UCC filing. See Stringer v. Sheffield, 451 So2d 320, 321 (AlaCivApp 1984); Wardle et al., supra, Â§3.15, at 102; 52 AmJur2d Marriage Â§41 (1970). If so, what would be the status of the parties during the interim between the ceremony and the recording?
[Â¶8] The real question here is whether there was any genuine issue of fact about the parties' relationship. Competent evidence of a marriage may be proven by direct or circumstantial evidence. See In re Estate of McCartney, 330 NW2d 723, 724 (Neb 1983); Nelson v. Marshall, 869 SW2d 132, 135 (MoCtApp 1993); Ma v. Ma, 483 NW2d 732, 735 (MinnCtApp 1992). AMI submitted an affidavit from the secretary of the Big Bend Presbyterian Church, confirming Claudia and Fredrick were married by an ordained minister in the church. No record of the marriage can be found with the register of deeds in accord with SDCL 25-1-37, but Claudia and Fredrick did take out a valid license, exchanged vows in a marriage ceremony, and lived together as a married couple. Claudia signed the hospital admission and consent papers as "Claudia Klusman, wife," and later signed a petition swearing under oath she was married to Fredrick.(3)  No genuine issue of fact exists. Fredrick and Claudia were husband and wife.
2. Deceased Spouse's Medical Bills 
[Â¶9] Claudia believes the Legislature intended spouses to be liable for nothing more than food, clothing, and fuel. SDCL 25-2-11 provides:

Every husband and wife shall be jointly and severally liable for the purchase price, if such price be stated or agreed upon at the time of purchase, and if not so stated or agreed upon, for the reasonable value of all the necessaries of life, consisting of food, clothing, and fuel purchased by either husband or wife for their family while they are living together as husband and wife.
(emphasis added). Her argument has facial merit if we apply the maxim of expressio unius est exclusio alterius, the enumeration of particular things excludes those things not mentioned. Yet, statutory rules of construction, applied senselessly, yield absurd results. Green v. Bock Laundry Mach. Co., 490 US 504, 527, 109 SCt 1981, 1994, 104 LEd2d 557, 575 (1989) (Scalia, J., concurring in the judgment). Will a wife be responsible for her husband's fuel, but not his life saving medical treatment? If we accept this interpretation, then we cannot reconcile SDCL 25-7-4, which makes it a felony for able persons to neglect to provide medical care to their spouses.

Every person with sufficient ability to provide for his or her spouse's support, or who is able to earn the means of the spouse's support, who intentionally abandons and leaves his or her spouse in a destitute condition, or who refuses or neglects to provide such spouse with necessary food, clothing, shelter or medical attendance, unless, by the spouse's misconduct, he or she is justified in abandoning the spouse or failing to so provide is guilty of a Class 6 felony.
[Â¶10] In determining legislative intent, we must give words "a reasonable, natural, and practical meaning." See In re Tax Refund of Media One, Inc., 1997 SD 17, Â¶9, 559 NW2d 875, 877 (construing SDCL 10-4-23); National Food Corp. v. Aurora County Bd. of Comm'rs., 537 NW2d 564, 566 (SD 1995) (citing Thermoset Plastics, Inc. v. Dept. of Revenue, 473 NW2d 136, 138-39 (SD 1991)); Whalen v. Whalen, 490 NW2d 276, 280 (SD 1992). Husbands and wives must stand accountable for each other's bills when third-party creditors provide necessaries to their respective spouses. That was the obvious intent behind these statutes--marriage as a partnership, with a duty to care for each other, hence the broad modifier "all" to the words "necessaries of life." See De Smet Ins. Co. of South Dakota v. Gibson, 1996 SD 102, Â¶7, 552 NW2d 98, 100 ("[T]he cardinal purpose of statutory construction--ascertaining legislative intent--ought not be limited to simply reading a statute's bare language; we must also reflect upon the purpose of the enactment, the matter sought to be corrected and the goal to be attained."); Nilson v. Clay County, 534 NW2d 598, 601 (SD 1995) (quoting Caldwell v. John Morrell & Co., 489 NW2d 353, 364 (SD 1992). Other statutes also enforce a spouse's obligation to pay medical bills as Chief Justice Dunn recognized when he wrote for a unanimous Court in Faulk County Mem'l Hosp. v. Neilan, 269 NW2d 121, 123 (SD 1978): "[W]e hold that under SDCL 25-7-1, 25-7-2 and 25-7-4 the general duty of a husband to support his wife is applicable and, therefore, Bernard is responsible for Blanche's hospital bills." Considering this overall statutory scheme, which applies to husbands and wives equally, a spouse's duty to pay for necessaries inescapably includes medical care and treatment.
[Â¶11] Lastly, AMI seeks attorney fees pursuant to SDCL 15-26A-87.3 and 15-6-11. Though Claudia was not successful in this appeal, she raised at least one nonfrivolous issue not previously decided by this Court. See Lee v. Rapid City Area School Dist., No. 51-4, 526 NW2d 738, 742 (SD 1995). AMI's motion is therefore denied.
[Â¶12] Affirmed.
[Â¶13] MILLER, Chief Justice, and AMUNDSON and GILBERTSON, Justices, and McKEEVER, Circuit Judge, concur.
[Â¶14] McKEEVER, Circuit Judge, sitting for SABERS, Justice, disqualified.
Footnotes
1.  Claudia also argues that because Fredrick was dead when his heart stopped beating for a few minutes, the medical care furnished to revive him was not necessary. She cites us to no authority for this theory and we know of none. The issue is therefore waived pursuant to SDCL 15-26A-60(6). Sporleder v. Van Liere, 1997 SD 110, Â¶25, 569 NW2d 8, 14; Werner v. Norwest Bank South Dakota, N.A., 499 NW2d 138, 141 (SD 1993). 
2.  Alaska Stat. Â§25.05.061; Okla. Stat. tit. 43, Â§5 (requirements mandatory, not directory). 
3.  Claudia maintains she signed the forms only as Fredrick's agent and thus she is not liable on the debt. Even if this were a plausible argument, it is not Claudia's signature on the forms which establishes her liability, but her legal relationship as Fredrick's spouse.