Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596
HTML Code Â© State Bar of South Dakota, 1999
IN THE MATTER OF THE APPLICATION OF B.Y. DEVELOPMENT, INC.
[2000 SD 102]
South Dakota Supreme Court
Appeal from the Sixth Judicial Circuit, Hughes County, SD
Hon. Steven L. Zinter, Judge
#21104--Affirmed
Roger A. Tellinghuisen, Michelle K. Percy, Spearfish, SD
Paul J. Bradsky, Rapid City, SD
Attorneys for Appellee, B.Y. Development, Inc.
Jon W. Mattson, Deadwood, SD
Attorney for City of Deadwood
and the Deadwood Historical Preservation Commission.
Mark Barnett, Attorney General
Michele K. Bennett, Diane Best
Assistant Attorneys General, Pierre, SD
Attorneys for Appellant South Dakota Department of Education
and Cultural Affairs, Office of History.
Considered on Briefs Mar 20, 2000; Opinion Filed Aug 2, 2000
KONENKAMP, Justice.
[Â¶1] This appeal concerns the proposed construction of a hotel-gaming facility within a historic district in the City of Deadwood, South Dakota. The Deadwood Historic Preservation Commission approved a modified project plan, with alterations suggested by, among others, the Department of Education and Cultural Affairs, Office of History. On appeal before the circuit court, the Office of History contended that although it did have an earlier opportunity to comment on the project, it did not have notice of the modified project plans ultimately approved by the Commission. In its ruling, the circuit court concluded that the Office of History received proper statutory notice of the project, and that later alterations to the plans did not require a new statutory notice, as every design change is not the instigation of a new project. We affirm.

BACKGROUND

[Â¶2] In the spring of 1998, B.Y. Development, Inc. proposed a plan for a hotel-gaming project on the 300 block of Main Street in Deadwood. Located near the edge of town, the project area lies within the Deadwood National Historic Landmark District, but outside the Downtown Historic District. The area was zoned commercial in 1990. Among the properties currently in the general vicinity are an apartment building, a gas station-convenience store, several hotels, a restaurant, an insurance agency, and a rodeo grandstand and arena. The project required demolition of a 1950s era motel and certain residences, and the relocation of other buildings.
[Â¶3] B.Y. applied to the Deadwood Historic Preservation Commission for permits to demolish the buildings in April and May of 1998. No plans for the project following the demolition were submitted at that time, so the application was tabled until the plans were presented. Four preliminary concept designs were submitted to the Commission on May 18, 1998. The City of Deadwood reviewed these designs and suggested changes. In the next several weeks, B.Y. submitted further preliminary concept designs that reflected the comments made by the City and the Commission. On June 5, 1998, the City submitted the preliminary concept design to the State Department of Education and Cultural Affairs, Office of History, for review and comment pursuant to SDCL 1-19A-11.1. B.Y. submitted color drawings of the project and preliminary floor plans, a site plan, and elevations to the City to review on June 7. The City suggested changes, which B.Y. incorporated into the plans, and on June 18, B.Y. submitted updated plans. On June 24, the Commission reviewed these revised project plans. B.Y supplied a computerized drawing of the completed project, after which the Commission approved the project design and sent its approval to the Office of History with an abbreviated case report.
[Â¶4] After reviewing the project plans, the Office of History issued a "Determination of Adverse Effect." The Commission reviewed this, but reaffirmed its approval. Several days later the Office of History met with the City and B.Y. to discuss design alternatives. No consensus for an acceptable design was reached at this meeting. B.Y., however, incorporated some suggestions made by the Office of History and revised the project, reducing the building height from 58 feet to 45 feet, increasing the length of the building from 250 feet to 296 feet, decreasing the number of rooms from 90 to 80, adding landscaping to improve the appearance of the facade, and simplifying the design. Before the Commission met to review and vote on the revised plan on August 12, 1998, Christopher Hetzel, the Deadwood Historic Preservation Officer, spoke with the Office of History about the revised plan. The Office informed him that this plan too would not be approved and Hetzel duly reported that decision to the Commission. Nonetheless, formal notice of the revised plan was not sent to Office of History as it now insists is required under SDCL 1-19A-11.1. The Commission approved the revised plan and entered its written determination and case report detailing the factors and alternatives it considered in making its decision.
[Â¶5] The Office of History appealed the matter to the circuit court. At the hearing, B.Y. sought to admit affidavits that had not been presented to the Commission. Over the Office of History's objection, the court admitted a portion of the affidavits. Thereafter, the court affirmed the decision of the Commission. The Office of History now appeals to this Court contending that (1) the circuit court erred by improperly admitting evidence outside the administrative record; (2) the Commission erred by issuing its final decision before the Office of History was provided with and afforded an opportunity to review final project plans; (3) the Commission erred by failing to address each feasible and prudent alternative to the proposal; and (4) the Commission erred by failing to include concise and explicit fact statements to support its findings.

STANDARD OF REVIEW

[Â¶6] We review an agency's decisions the same as the circuit court, "unaided by any presumption of the correctness of the circuit court's determination." Olson v. City of Deadwood, 480 NW2d 770, 775 (SD 1992) (citation omitted). Our first inquiry under SDCL 1-26-36 is whether the question is one of fact or law. Questions of law and statutory construction are fully reviewable. Hanten v. Palace Builders, Inc., 1997 SD 3, Â¶8, 558 NW2d 76, 78. Mixed questions of law and fact are also fully reviewable. Abild v. Gateway 2000, Inc., 1996 SD 50, Â¶6, 547 NW2d 556, 558-59. Factual findings are reviewed under the clearly erroneous standard. Sopko v. C & R Transfer Co., 1998 SD 8, Â¶6, 575 NW2d 225, 228.

ANALYSIS AND DECISION

1. Admission of Evidence Outside the Administrative Record
[Â¶7] The Office of History challenges the admissibility of the affidavits, pointing out that they were written after the Commission made its decision, and the Commission therefore could not have considered them. In the circuit court hearing, B.Y. offered the affidavits of Christopher Hetzel, the Deadwood Historic Preservation Officer, and Bernadette Williams, the Deadwood Zoning Administrator. In admitting the affidavits, the court explained:


Well, it's my view that some of it is additional evidence; some of it is not. And I will--I will accept the filings only insofar as they're specifically referenced and it's evident that that evidence was considered by the Commission. The affidavits also go beyond that and to the extent that they incorporate any other matters that aren't specifically in the record or referred to in the record and show that they were considered, they're excluded.
It is unclear, however, exactly what was admitted and what was excluded. Pointing to SDCL 1-26-35, (fn1)  the Office of History believes that while this statute allows a court sitting without a jury to go beyond the record in certain instances, the exceptions are inapplicable here. Because the circuit court did not specify what was being admitted, the Office of History argues that the affidavits and the accompanying exhibits should have been entirely excluded.
[Â¶8] Comparing the information before the Commission and the information in the circuit court's findings and conclusions confirms that the findings that form the basis for the court's decision do not refer to any fact stated in the affidavits not also contained in the official record. Those items not considered by the Commission were also not considered by the court in its ruling. For example, an attachment to the affidavit of Williams lists variances granted in zoning unit four, the most stringent unit for historic preservation, and in zoning unit ten. The list states the various Deadwood businesses given a variance and the nature of the variance. A check of the references to the location in the record that allegedly indicate that the Commission considered this information shows that the Commission discussed the height of several buildings, but no specific variances were mentioned. The court's findings and conclusions do not mention this information either. Similarly, Williams stated in her affidavit that the project as approved by the Commission "satisfies the 1:7:1 Floor Area Ratio requirement in Commercial Highway zoning." It would be an overstatement to say that the general conversations in the record concerning zoning to which the court was directed are the same as this specific information, but the circuit court also did not include this in its findings.
[Â¶9] As declared in SDCL 1-26-35, the court's review is confined to the record below, absent an exception. Stanley County Sch. v. Stanley County Educ. Ass'n, 310 NW2d 162, 164 (SD 1981). However, we presume until the contrary is shown that the "court did not rely on improper evidence." State Highway Comm'n v. Foye, 87 SD 206, 205 NW2d 100, 103 (1973) (citing Sabbagh v. Prof'l and Bus. Men's Life Ins. Co., 79 SD 615, 116 NW2d 513, 521 (1962)). It appears the circuit court relied only on evidence the Commission considered in making its decision. Even though the court did not specify what exact evidence it admitted, it made clear that to the extent an affidavit contained information not specifically in or referred to in the record, it would not be considered. The Office of History has not shown how this process harmed its position. In re Novaock, 1998 SD 3, Â¶10, 572 NW2d 840, 843. Because the court confined its determination to the record, we find no prejudicial error.
2. Opportunity to Review Final Project Plans
[Â¶10] The Office of History argues that the Commission is required to notify the Office before proceeding with a final decision. Its source for this view is SDCL 1-19A-11.1:


The state or any political subdivision of the state, or any instrumentality thereof, may not undertake any project which will encroach upon, damage or destroy any historic property included in the national register of historic places or the state register of historic places until the office of history has been given notice and an opportunity to investigate and comment on the proposed project. The office may solicit the advice and recommendations of the board with respect to such project and may direct that a public hearing be held thereon. If the office determines that the proposed project will encroach upon, damage or destroy any historic property which is included in the national register of historic places or the state register of historic places or the environs of such property, the project may not proceed until:

(1) The Governor, in the case of a project of the state or an instrumentality thereof or the governing body of the political subdivision has made a written determination, based upon the consideration of all relevant factors, that there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to the historic property, resulting from such use; and
(2) Ten day's notice of the determination has been given, by certified mail, to the office of history. A complete record of factors considered shall be included with such notice.
Any person aggrieved by the determination of the Governor or governing body may appeal the decision pursuant to the provisions of chapter 1-26.
The failure of the office to initiate an investigation of any proposed project within thirty days from the date of receipt of notice thereof is approval of the project.
Any project subject to a federal historic preservation review need not be reviewed pursuant to this section.
After the Office of History decided the initial proposed project would encroach upon, damage, or destroy historic property, B.Y prepared a modified design. This design, the Office of History argues, amounted to a new proposal, and the Office was not given an opportunity to investigate and comment on that proposal before the plans were submitted to the Commission for final approval.
[Â¶11] First, SDCL 1-19A-11.1 does not give the Office of History the power to disapprove the Commission's final decision. Instead, the statute provides that the Commission may not take any action on a proposed project until the Office of History has been given an opportunity to investigate and comment on it. Even if the Office of History concludes that a project "will encroach upon, damage or destroy any historic property," the project may proceed if the Commission finds that, based on consideration of all relevant factors, "there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to the historic property, resulting from such use ... ." SDCL 1-19A-11.1(1). Therefore, unless the Office of History is successful on appeal, following the Commission's written determination the project may proceed despite the Office of History's objections. Here, the circuit court found that the revised plans, rather than being a new proposal, were modifications, which the Commission had the authority under the statute to finally approve.
[Â¶12] Second, SDCL 1-19A-11.1 calls for "notice and an opportunity to investigate and comment on the proposed project." (Emphasis added.) We usually give statutory "words and phrases their plain meaning and effect." South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exch., 1999 SD 2, Â¶17, 589 NW2d 206, 209 (quoting Delano v. Petteys, 520 NW2d 606, 608 (SD 1994) (quoting In re Famous Brands, Inc., 347 NW2d 882, 884-85 (SD 1984))). Had the Legislature intended to give the Office of History the right to notice and an opportunity to comment on every design change in a project, it could have used language to that effect.
[Â¶13] The words "proposed project" suggest that design modifications do not necessarily trigger a requirement for resubmission of project plans to the Office of History. The Legislature also chose the word "comment" rather than "approve." Therefore, under our interpretation of SDCL 1-19A-11.1, the Commission was not required to resubmit the adjusted plans to the Office of History. As a practical matter, to hold otherwise would create a situation where every alteration in a plan would subject a project to resubmittal, effectively bringing construction to a standstill. We do not believe that is what the Legislature intended.
[Â¶14] Third, even if we were to interpret the statute to prohibit design changes without a full resubmission to the Office of History, as the circuit court found, there was no prejudice to the Office of History because there was no showing how any further comments would have made any difference in the final plans the Commission approved. After all, the project remained essentially the same, but with some modification made in part to mollify the Office of History.
3. Feasible and Prudent Alternatives
[Â¶15] Next, the Office of History contends that the Commission did not consider all feasible and prudent alternatives to the proposal. In accord with the requirements of SDCL 1-19A-11.1(1), the Commission must issue a written decision after an adverse finding by the Office of History. The Commission's determination must conclude, "based upon the consideration of all relevant factors, that there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to the historic property, resulting from such use. ..." The Office of History argues that rather than considering "all relevant factors," such as the historic criteria outlined in ARSD 24:52:07:04 and 36 CFR 67, the Commission considered only economic factors, giving cursory attention to historical criteria.
[Â¶16] The Commission is not required to consider as "relevant factors" any and all alternatives, but only those supported by sufficient facts to indicate they are feasible and prudent. B.Y. points out that according to the South Dakota Local Preservation Handbook (1995), all that is required is the exploration of feasible alternatives to reduce harm to historic property. Further, B.Y. continues, the extensive consideration given to the plans over a four month period, along with the detail set out in the case report, establish that while economic factors were considered, all relevant factors were considered as well.
[Â¶17] The circuit court noted that the Office of History did not brief or argue this issue and thus the matter was not properly before it. Generally, failure to raise an issue below will preclude appellate review. Matter of Simpson, 500 NW2d 624, 626 (SD 1993); Sharp v. Sharp, 422 NW2d 443, 445 (SD 1988). Our function on appeal is to decide from the record whether the Commission took a hard look at the prudent and reasonable alternatives using relevant factors and based its decision on evidence. The weight to be given the individual factors is for the Commission to decide. The record shows that, among other things, the Commission reviewed several proposed designs and rejected several; considered smaller and different shaped buildings; expressed concern about the height of the building, rejecting taller structures and eventually approving a height of forty-five feet; considered setbacks from the street; evaluated overall width and mass, as well as overall appearance, including landscaping; appraised the impact on the surrounding historic properties; and recognized that the area is zoned commercial, in that residential development was not allowed. It is apparent that the Commission considered not only economic factors, but also other reasonable alternatives.
4. Factual Support for the Commission's Findings
[Â¶18] Finally, the Office of History argues that the Commission failed to reveal the underlying facts supporting its findings, as required by SDCL 1-26-25. (fn2)  The Office contends that the Commission's written decision does not establish a basis for its approval of the project, as evidenced by the record having to be supplemented with affidavits. The Commission, the Office asserts, did not make specific findings on the economic feasibility of or the need for a project of this size, or what it meant by its finding that "[o]ther designs were also discussed, but were rejected because they would not accommodate the project's objectives." As it exists, the Office of History argues, the record does not allow for meaningful judicial review.
[Â¶19] We conclude that SDCL 1-26-25 does not apply to the Commission's preparation of its written decision; rather, that statute applies to contested cases. A contested case is one in which a matter is to be determined by an agency. (fn3)  The definition of "agency" under SDCL 1-26-1(1) expressly excludes any unit of local government. (fn4)  Therefore, the Commission is not required to follow the requirements of SDCL 1-26-25 in conducting its administrative responsibilities. Also, SDCL 1-29A-11.1 requires the Commission to prepare a written determination, not findings. The Commission appears to have followed the directives of this statute and SDAdminR 24:52:07:03 in preparing its written decision. The Commission is not required to follow all the requirements of an administrative agency, but it must make a written decision detailing its reasons for approving a project.
[Â¶20] Here, the written decision adequately details the reasons the Commission arrived at its conclusion. The decision follows closely the pattern set forth in SDAdminR 24:52:07:03, which specifies the requirements for case reports submitted to the Office of History. Presented in the decision are alternatives and other relevant factors the Commission considered. We conclude that this writing was adequate to provide meaningful appellate review, and that it satisfied the requirements of SDCL 1-19A-11.1 and SDAdminR 24:52:07:03.
[Â¶21] Affirmed.
[Â¶22] MILLER, Chief Justice, and AMUNDSON and GILBERTSON, Justices, concur.
[Â¶23] SABERS, Justice, dissents.
SABERS, Justice (dissenting).
[Â¶24] I respectfully disagree with the majority opinion's determination in Issue 2 that the Office of History was provided with an opportunity to investigate and comment on the project ultimately approved by the Commission.
[Â¶25] SDCL 1-19A-11.1 prohibits the Commission from undertaking a project that will "encroach upon, damage or destroy any historic property ... until the [O]ffice of [H]istory has been given notice and an opportunity to investigate and comment on the proposed project[.]" Given the plain meaning of this statutory language, the obvious purpose of the statute is to protect historical property. (fn5)  In order to carry out that purpose, the legislature requires that the Office of History be provided with an opportunity to investigate and comment on any proposed project that is to be constructed on historical property.
[Â¶26] Here, the site for the proposed project involves historical property in Deadwood. The Office of History reviewed and commented on the initial plans. However, after the Office commented on the initial plans, substantial changes were made: (1) the height of the building was reduced from fifty-eight feet to forty-five feet; (2) the length of the building was increased from 250 feet to 296 feet; (3) the number of the rooms was reduced from ninety to eighty; and (4) landscaping was added to aesthetically improve the faÃ§ade. Obviously, this plan was drastically different in dimension, capacity and appearance than the initial plan submitted to the Office of History. In fact, these substantial changes constitute an entirely new plan. Therefore, the Office of History was statutorily entitled to evaluate the new plan to determine the extent of the encroachment, damage or destruction of historic property. However, this new plan was never submitted to the Office of History. Instead, BY circumvented the statutory procedure and obtained final approval from the Commission.
[Â¶27] The majority opinion terms these substantial and material alterations as a mere "design change." The effect of this characterization is to invite developers to submit preliminary plans to the Office of History once and, thereafter, substantially change the plans and seek final approval from the Commission. Clearly, this was not the legislature's intention, which was to preserve and protect historical property.
[Â¶28] The Office of History is a regulatory agency established to ensure that historic preservation concerns are satisfied. While the legislature does not require that developers comply with the comments from the Office of History, it did, nonetheless, clearly require that the Office of History be provided with an opportunity to "investigate and comment on the proposed project." This is part of the statutory process to ensure that "there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to the historic property ... ." SDCL 1-19A-11.1(1). Here, the statutory process was circumvented and the Office was denied its opportunity to investigate and comment on the project that received final approval from the Commission.
[Â¶29] The majority opinion further claims that a reversal "would create a situation where every alteration in a plan would subject a project to resubmittal, effectively bringing construction to a standstill." I disagree. Insignificant modifications do not require resubmissions to the Office before they are implemented. However, when the plans substantially change the dimension, appearance and capacity, resubmission to the Office of History is statutorily required because the changes constitute a new proposed plan.
[Â¶30] Because a new plan was proposed to the Commission without providing an opportunity to the Office of History to investigate and comment, the Commission's final approval was premature and illegal. Therefore, this case should be reversed and remanded.
[Â¶31] I would also reverse and remand on Issue 1 because the acceptance of affidavits outside the record clearly violates SDCL 1-26-35 and demonstrates the cavalier attitude of the trial court and this court toward "historic preservation" when it dares to get in the way of "economic progress." SDCL 1-26-35 provides that "[t]he review shall be conducted by the court without a jury and shall be confined to the record." (emphasis added). The plain language cannot be any plainer. 
Footnotes
1.  SDCL 1-26-35 provides:


The review shall be conducted by the court without a jury and shall be confined to the record. A trial de novo may not be granted unless otherwise authorized by law, but in cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, may hear oral argument. 
2.  SDCL 1-26-25 states in part:


A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. It may affirm, modify, or nullify action previously taken or may direct the taking of new action within the scope of the notice of hearing. It shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. 
3.  A "contested case" is defined as


a proceeding, including rate-making and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing but the term does not include the proceedings relating to rule making other than rate-making, proceedings related to inmate disciplinary matters as defined in Â§ 1-15-20, or student academic or disciplinary proceedings under the jurisdiction of the Board of Regents or complaints brought by students attending institutions controlled by the Board of Regents about their residency classification under Â§Â§ 13-53-23 to 13-53-41, inclusive[.]
SDCL 1-26-1(2). Also, as we recently discussed in Bergee v. South Dakota Board of Pardons and Paroles, 2000 SD 35, Â¶6, 608 NW2d 636, 640, a usual characteristic of a contested case is that it is adversarial. 
4.  SDCL 1-26-1(1) defines "Agency" as


each association, authority, board, commission, committee, council, department, division, office, officer, task force or other agent of the state vested with the authority to exercise any portion of the state's sovereignty. The term does not include the Legislature, the Unified Judicial System, any unit of local government, or any agency under the jurisdiction of such exempt departments and units unless the department, unit, or agency is specifically made subject to this chapter by statute[.] 
5.  SDCL 1-19A-11.1 is similar to the National Historic Preservation Act of 1966 (16 USC Â§ 470 et seq.) which establishes the National Register of Historic Places. Property that is listed in the National Register is subject to favorable tax treatments as well as federal grants. 36 C.F.R. Â§ 60.2(c)). Whenever a listed site is the subject of a federal proposed project, the Advisory Council on Historic Preservation must be afforded "a reasonable opportunity to comment" on the project. 16 USC Â§ 470h-2(f). These comments must be "taken into account and integrated into the decisionmaking process, [however,] the program decisions rest with the agency implementing the [project]." 36 C.F.R. Â§ 60.2(c).