#23591-a-TIMM, Circuit Judge

**2006 SD 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SUZANNE KORZAN, JOAN SCHULZ,
BETTY HEIDINGER, LUCILLE GEISLER
and GLADYS SEBASTIAN,                                   Plaintiffs and Appellants,

  v.

CITY OF MITCHELL,                                   Defendant,

  and

ROMAN CATHOLIC CHURCH
OF HOLY FAMILY OF MITCHELL,                                   Intervenor and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MAX A. GORS
Judge

\* \* \* \*

TIMOTHY W. BJORKMAN
MIKE C. FINK of
Bjorkman & Fink
Bridgewater, South Dakota                                   Attorneys for appellants.

JOHN F. COGLEY of
Morgan, Theeler, Wheeler, Cogley
  & Petersen
Mitchell, South Dakota                                   Attorneys appellee.

\* \* \* \*

ARGUED NOVEMBER 8, 2005

OPINION FILED **01/04/06**

#23591

TIMM, Circuit Judge

[¶1.] Korzan appeals from the circuit court's findings that the City of Mitchell had complied with SDCL 1-19A-11.1 and that application of SDCL 1-19A-11.1 created a substantial burden on Holy Family in violation of the Religious Land Use and Institutionalized Persons Act of 2000. We Affirm.

**Facts and Procedural History**

[¶2.] The Appellants seek to prevent the demolition of Notre Dame Academy, a building that is listed on the National and State Registers of Historic Places. The Notre Dame Academy (School) is located on the one block campus of the Holy Family Catholic Church (Holy Family). The School, a three story structure, was built in 1912. Additions were constructed in 1922 and 1955. The School, church and a rectory, also located on the campus, were listed on the National Register of Historic Places in 1974 and subsequently placed on the South Dakota Register.

[¶3.] In 1995 Holy Family received a report from the State Fire Marshall's Office whose inspection of the School revealed a number of building and fire code violations as well as other unsafe conditions that required correction. Holy Family, along with Holy Spirit (the other Catholic Church in Mitchell) formed a task force to study the educational facilities at both locations with the initial goal of preserving the School. The task force and the two Parishes met on numerous occasions and eight options were studied. The task force ultimately recommended that the old school be demolished, a new school be built at Holy Family, and that the school at Holy Spirit be added on to and remodeled. Members of both Parishes met in

-1-

September of 1998. All options were explained and discussed. A strong majority approved the recommended option of demolishing the School.

[¶4.]     In May of 1999 Holy Family announced plans to demolish the School and initiated the process with the City of Mitchell (City) to obtain a demolition permit. The State Office of History (SOH) was notified on May 19, 1999, of the proposed project in accordance with SDCL 1-19A-11.1. SOH determined that the project would have an adverse effect on a historic building and requested a case report on June 1, 1999. A case report was prepared. The Mitchell City Council (City Council) considered the project in lengthy discussions at a meeting on May 17, 1999. The Case Report was considered by the Mitchell Historic Preservation Commission (Historic Commission) on July 6, 1999. The Historic Commission voted to unanimously agree with the findings of the Case Report that there were no feasible and prudent alternatives to the demolition of the School and that the report included all possible planning to minimize the harm to the historic property.

[¶5.]     The City Council considered the matter again on July 6, 1999; and voted unanimously to adopt the Case Report and issue the demolition permit. The City Council found that based on the consideration of all relevant facts, there were no feasible and prudent alternatives to the proposal to demolish the School and that the project included all possible planning to minimize harm to historic property. Korzan appealed to the Sixth Judicial Circuit on July 16, 1999. On October 25, 2001, the circuit court remanded the matter back to the City Council for further proceedings only after the SOH had the opportunity to comment on the project. The circuit court determined that SDCL 1-19A-11.1 did not permit the City Council to

make its final findings regarding feasibility and alternatives prior to comment from SOH.

[¶6.]     The application for a demolition permit lay dormant from the date of the circuit court's remand in 2001 well into 2003.  During that time, Holy Family and Holy Spirit made the decision to construct a new school at Holy Spirit.  The question of what to do with the School at Holy Family remained under study.  Evolving needs of the Parish came into play, *i.e.*, the need for a handicap accessible entrance to the Church and more off-street parking.  Holy Family also considered several other options for the School.  These options included renovation of the School for use as gathering space, a small chapel and offices or converting the School to housing for the elderly.  In evaluating these options, it was determined that having a housing complex and the Church in such close proximity would not be compatible.[1]  It was also determined that renovating the School would not be suitable for the needs of the Parish.  Holy Family concluded that the occupied space could be used in a more efficient manner for a new structure and off-street parking.  Thus, in 2003 Holy Family again sought a demolition permit from the City Council.

[¶7.]     A supplement to the Case Report was prepared and sent to the SOH.  The Historic Commission held a hearing on August 20, 2003, and received testimony from proponents and opponents.  They again considered the matter on

---

1.     The School is located less than 100 feet from the Church.

#23591

August 23 and October 22, 2003. At both of these meetings the Historic Commission heard proposals and testimony from both sides.

[¶8.] On October 28, 2003, the Historic Commission having reviewed both the original Case Report and the Supplement, considered the testimony of proponents and opponents, and examined the old school, voted five to two in favor of a motion to agree with the findings of both the original Case Report and Supplement that there were no feasible and prudent alternatives to demolition of the School.

[¶9.] The City Council received a response from SOH on December 3, 2003. In this response SOH concluded that several feasible and prudent alternatives to demolition existed including: 1) doing a less than full scale renovation of the original building for use as a chapel with a handicapped accessible entrance with the rest of the building being "mothballed" for future renovations; and, 2) supporters of the School be given the opportunity to raise money to pay the difference, if any, between the cost of renovating the building and the cost of demolishing the current building and constructing a new building.

[¶10.] The City Council considered the request on December 15, 2003. After reviewing the original Case Report, the Supplement, the response from SOH and hearing testimony from both sides, the City Council unanimously adopted a resolution. This resolution acknowledged the Case Report, the Supplement and the decision of the Historic Commission and stated, based on consideration of all relevant factors, that there were no reasonable and prudent alternatives to the demolition of the School. The City Council also found that the project included all

-4-

possible planning to minimize harm to the historic property resulting from the demolition.

[¶11.]     Korzan appealed again to the Sixth Judicial Circuit.  The circuit court affirmed the decision of the City Council in all respects.  The court also concluded that the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 USC § 2000cc et seq., prohibits a governmental body from imposing or implementing a land use regulation in a manner that would substantially burden the religious exercise of a person or institution.  The court further held that as it was being applied in this case, SDCL 1-19A-11.1 was a "land use regulation" as defined in RLUIPA and that the statutory prerequisites of RLUIPA were satisfied.  Finally, the court found that RLUIPA prohibited the application of SDCL 1-19A-11.1, as the effect of the statute was to deny Holy Family the ability to develop its property as it desires in accord with its religious teachings.  Korzan appeals raising the following issues:

> 1.  Whether the trial court erred in finding that the Mitchell City Council had complied with SDCL 1-19A-11.1.
>
> 2.  Whether application of SDCL 1-19A-11.1 created a substantial burden on Holy Family's religious exercise and is thus barred under RLUIPA.

### Standard of Review

[¶12.]     We review an agency's decision the same as the circuit court, "unaided by any presumptions of the correctness of the circuit court's determination."  In Re B.Y. Development Inc., 2000 SD 102, ¶6, 615 NW2d 604, 607.  Our review is confined to the record.  SDCL 1-26-35.  Questions of law and statutory construction are fully reviewable.  *B.Y. Development*, 2000 SD 102, ¶6, 615 NW2d at 608.  This

Court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. SDCL 1-26-36. The court may reverse or modify the decision if the administrative findings, inference, conclusions, or decisions are clearly erroneous in light of the entire evidence in the record or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Id.*

## Analysis and Decision

[¶13.] **1. Whether the trial court erred in finding that the Mitchell City Council complied with SDCL 1-19A-11.1.**

[¶14.] Korzan contends that the City Council did not comply with the requirements of SDCL 1-19A-11.1. This statute provides in relevant part:

> The state or any political subdivision of the state, or any instrumentality thereof, may not undertake any project which will encroach upon, damage or destroy any historic property included in the national register of historic places or the state register of historic places until the Office of History has been given notice and an opportunity to investigate and comment on the proposed project. The office may solicit the advice and recommendations of the board with respect to such project and may direct that a public hearing be held thereon. If the office determines that the proposed project will encroach upon, damage or destroy any historic property which is included in the national register of historic places or the state register of historic places or the environs of such property, the project may not proceed until:
>
> > (1) The Governor, in the case of a project of the state or an instrumentality thereof or the governing body of the political subdivision has made a written determination, based upon the consideration of all relevant factors, that there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to the historic property, resulting from such use; and
> >
> > . . .

> Any person aggrieved by the determination of the Governor or governing body may appeal the decision pursuant to the provisions of chapter 1-26[.]

SDCL 1-19A-11.1.  Specifically, Korzan contends that the City Council failed to consider all relevant factors and failed to evaluate whether there were any feasible and prudent alternatives to the proposed demolition.

[¶15.]        The City Council was informed by the SOH that the proposed demolition of the School would destroy historic property.  Thus, under SDCL 1-19A-11.1 the City Council could not issue the demolition permit until it made a written determination, after reviewing all relevant factors, that there were no feasible and prudent alternatives and all possible planning to minimize harm to the historic property had been considered.  This Court has held that a city "is not required to consider as 'relevant factors' any and all alternatives, but only those supported by sufficient facts to indicate they are feasible and prudent."  *B.Y. Development*, 2000 SD 102, ¶16, 615 NW2d at 610.

[¶16.]        Holy Family, the City Council, and the Historic Commission considered several alternatives to demolishing the School, either in whole or just the 1922 and 1955 additions.  Each time, Holy Family, the Historic Commission and the City Council determined that none of the alternatives were feasible.  The last two alternatives considered by the City Council were provided by the SOH.  These alternatives were:  1) a less than full scale renovation of the original building and "mothballing" the remaining portion of the building; and, 2) allowing supporters of the building the opportunity to raise money to pay the difference in costs between demolishing and building a new building to renovating the current building.  As the

trial court correctly pointed out, "mothballing" the School is neither feasible nor prudent. The trial court recognized that mothballing the structure would leave many unanswered questions: how long must the Church wait, who would pay for stabilization of the roof to prevent further deterioration of the building, who would pay the cost of maintenance, who would decide when a use was found and when the search was over? The determination by the City Council that the first alternative was not feasible was not clearly erroneous.

[¶17.] The other alternative provided by SOH, allowing Korzan an opportunity to raise money, is also not feasible or prudent. Holy Family, the Historic Commission, and the City Council have already determined that the needs of the church cannot be met unless the building is torn down. Raising money, an enterprise that may or may not succeed and could take several years, does not address this concern and it does not give Holy Family the space it needs. What it does give them is a building they do not want. The City Council was not clearly erroneous in determining this option was not feasible.

[¶18.] This Court's function is to "decide from the record whether the [City Council] took a hard look at the prudent and reasonable alternatives using relevant factors and based its decision on evidence. The weight to be given the individual factors is for the [City Council] to decide." *B.Y. Development.*, 2000 SD 102, ¶17, 615 NW2d at 611. The record reveals that extensive consideration has been given to this project, a project that has been ongoing for nearly six years. A Case Report detailing options and the feasibility of those options was prepared and reviewed by both the Historic Commission and City Council. Both bodies determined that, after

considering all relevant factors, no feasible and prudent alternatives to the demolition of the School existed. This Case Report was sent to the SOH as required under SDCL 1-19A-11.1. A Supplement to the original Case Report was prepared, describing what had transpired from the time of the first appeal to the present. The Supplement set out the alternatives to demolition that had been considered and the reasons why they had not been pursued. The Supplement was reviewed by the Historic Commission and the City Council. Again the Historic Commission determined, after reviewing all relevant factors that no feasible and prudent alternatives to the proposed demolition of the School existed.

[¶19.] The City Council reviewed and approved the Supplement and the recommendations of the Historic Commission. This Supplement was then forwarded to the SOH for comment as per SDCL 1-19A-11.1. The City Council received and reviewed those comments from the SOH. At a meeting on December 15, 2003, the City Council also heard testimony and presentations from proponents and opponents of the project. At the conclusion of this meeting, the City Council passed a Resolution in which they acknowledged the hearings they had held and those held by the Historic Commission. They acknowledged the vote in favor of demolition by the Historic Commission. They acknowledged the comments provided by SOH and that they had considered them. Finally, the City Council concluded that upon consideration of all relevant factors, there were no feasible and prudent alternatives to the demolition of the School and the project included all possible planning to minimize harm to the historic property.

[¶20.] Based on the record, it is clear that the City Council took a 'hard look' at this project. All options and proposals against demolition were presented by proponents and opponents to both the Historic Commission and the City Council on several occasions. Twice, after taking a 'hard look' both the Historic Commission and the City Council determined that no feasible and prudent alternatives to demolition of the School existed.[2]

[¶21.] On this record, the trial court did not err in concluding that the City Council's determination was not clearly erroneous or arbitrary or capricious.

[¶22.] **2. Whether application of SDCL 1-19A-11.1 to this case creates a substantial burden on Holy Family's religious exercise and is thus barred under RLUIPA.**

[¶23.] Because we have held the trial court ruled correctly on the first issue, the second issue need not be addressed.

[¶24.] Affirmed.

[¶25.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

[¶26.] TIMM, Circuit Judge, sitting for ZINTER, Justice, disqualified.

---

2. Although the parties engage in an extended discussion of authority from another jurisdiction, (Allen Realty, Inc. v. City of Lawrence, 790 P2d 948 (KS 1990) and Lawrence Preservation Alliance v. Allen Realty Inc., 819 P2d 138 (KS 1992), the result in this case is controlled by *B.Y. Development*, 2000 SD 102, 615 NW2d 604. Consequently, we do not address that authority.