#24387-a-JKK

**2007 SD 119**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WILLIAM R. RUSH, Individually,
NORTH AMERICAN TRUCK &
TRAILER, INC., and CAROLINA
COMMERCIAL TRUCK SALES, L.L.C.,          Plaintiffs and Appellants,

   v.

U.S. BANCORP EQUIPMENT
FINANCE, INC.,                           Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE STUART L. TIEDE
Judge

\* \* \* \*

LAURA L. KOOB
BRIAN L. RADKE of
Radke Law Office, P.C.                   Attorneys for plaintiffs
Sioux Falls, South Dakota                and appellants.

ROGER W. DAMGAARD of
Woods, Fuller, Shultz & Smith, P.C.      Attorneys for defendant
Sioux Falls, South Dakota                and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2007

OPINION FILED **11/14/07**

KONENKAMP, Justice

[¶1.]    In this appeal from a summary judgment, a debtor contends that its creditor should have protected the debtor's financial circumstances by perfecting the creditor's security interest. From the language of the contract documents, we conclude that the security interest was for the protection of the creditor, and its failure to perfect that interest created no claim for the debtor. Therefore, we affirm summary judgment for the creditor.

## Background

[¶2.]    William Rush is the president of North American Truck & Trailer and Carolina Commercial Truck Sales, LLC. Rush, North American, and Carolina will be collectively referred to as "plaintiffs." US Bancorp Equipment Finance Inc. provided financing to North American in the form of a sale-leaseback arrangement for the purchase of twenty Volvo trucks. North American purchased the trucks and then sold them to US Bancorp which, in turn, agreed to lease the trucks to North American. North American then subleased the trucks to Carolina by executing a document similar to the lease between US Bancorp and North American. North American assigned its interest in this sublease to US Bancorp, and Carolina executed a security agreement in favor of US Bancorp, granting a security interest in the trucks. Carolina, in turn, leased the trucks to the end user, Oklahoma Southern Transportation, Inc.

[¶3.]    Oklahoma Southern took possession of the trucks, and Carolina received the manufacturer's statements or certificates of origin (MSO). The MSOs identified Carolina as the lessor, Oklahoma Southern as the lessee, and US Bancorp

as the lienholder. According to US Bancorp, it was the responsibility of Oklahoma Southern to title and license the trucks, but Oklahoma Southern licensed the trucks without first obtaining titles. It was able to do this through a loophole in Oklahoma law. Because Oklahoma Southern licensed the trucks without titling them, US Bancorp's interest in the trucks did not become perfected.

[¶4.] In 2000, Oklahoma Southern filed for Chapter 11 bankruptcy. At the same time, plaintiffs became aware that Oklahoma Southern did not obtain titles to the trucks, and therefore, US Bancorp's security interest was not perfected. The trucks became property of the bankruptcy estate and Oklahoma Southern stopped paying on the lease to Carolina. Plaintiffs were nevertheless required to pay on their lease to US Bancorp. In 2001, Carolina moved for relief from the automatic stay to foreclose on and repossess the trucks. The trustee objected to the motion because Carolina was an unsecured creditor. Carolina was ultimately able to settle with the trustee, whereby Carolina paid $25,000 for the release of the trucks.

[¶5.] Plaintiffs brought suit against US Bancorp asserting that the bank had a duty under the parties' various contractual agreements to ensure that US Bancorp's security interest was properly perfected. According to plaintiffs, had US Bancorp properly perfected its security interest, plaintiffs would have been able to immediately repossess the trucks or have them released from the bankruptcy estate. Because US Bancorp failed to ensure that the security interest in the trucks was properly perfected, plaintiffs asserted that they suffered financial losses.

[¶6.] US Bancorp moved for summary judgment. In granting the motion, the circuit court concluded that "there was no duty, contractual or otherwise, on the

part of the Bank to either ensure that the trucks were titled in the name of the bank" or to perfect "its security interest in the trucks." The court also concluded that there was no special relationship between the parties, other than that of creditor and debtor. Finally, the court declined to consider the course of dealings between the parties because the contract language specifically prohibited it. Plaintiffs appeal asserting that (1) US Bancorp had a duty to title the twenty trucks and perfect its security interest; and (2) the course of dealings between the parties placed that duty on the bank.

## Standard of Review

[¶7.]     "When reviewing a grant of summary judgment, we decide only whether there were genuine issues of material fact and whether the law was correctly applied." Heib v. Lehrkamp, 2005 SD 98, ¶19, 704 NW2d 875, 882 (citing SDCL 15-6-56(c); Keystone Plaza Condominiums Ass'n v. Eastep, 2004 SD 28, ¶8, 676 NW2d 842, 846). "We view the evidence in a light most favorable to the nonmoving party." Toben v. Jeske, 2006 SD 57, ¶9, 718 NW2d 32, 35 (citing Wilson v. Great Northern Ry. Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968)). The moving party has the burden of showing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." Yarcheski v. Reiner, 2003 SD 108, ¶15, 669 NW2d 487, 493 (citing S.D. Dept. of Rev. v. Thiewes, 448 NW2d 1, 2 (SD 1989)).

## Analysis and Decision

[¶8.]     Plaintiffs first claim that the "Warranties and Covenants of the Debtor" clause of the security agreement imposed a duty on US Bancorp to perfect its security interest in the trucks.  The language of that clause stated:

> At the request of the Secured Party, Debtor will execute, acknowledge and deliver to Secured Party in recordable or fileable form, any document or instrument required by the Secured Party to further the purpose of this Agreement, or to perfect its interest in the Collateral or to maintain such perfected interest in full force and effect.

Plaintiffs also invoke the power of attorney clause in the master lease to argue that the bank had two specific duties:  (1) "authority to complete and execute financing statements"; and (2) "conform the description of the Property in any such financing statement or other documentation."[1]

[¶9.]     We see nothing in the language of the security agreement or power of attorney clause that imposed an affirmative duty on the bank to perfect.  Just the opposite, the language of the security agreement imposed a duty on the debtor to assist the creditor in the creditor's effort to perfect, if the creditor so desired.  The

---

1.     Plaintiffs also assert that the power of attorney clause created a fiduciary relationship between them and US Bancorp.  US Bancorp argues that plaintiffs failed to argue this to the circuit court and, therefore, waived the argument for appeal.  Plaintiffs contend that because US Bancorp claimed that there was no special relationship between the parties and the court held there was no special relationship, the issue was preserved.  Although the court stated that there was no special relationship between the parties, there was nothing in the court's statement to indicate that it considered whether there was a fiduciary relationship.  Plaintiffs have failed to assert the fiduciary relationship argument below, and, therefore, it is waived on appeal.  *See In re* B.Y. Dev., Inc., 2000 SD 102, ¶17, 615 NW2d 604, 611 (citing *In re* Sales Tax Liability of Simpson, 500 NW2d 624, 626 (SD 1993); Sharp v. Sharp, 422 NW2d 443, 445 (SD 1988)).

power of attorney clause gave the bank the "authority" to do certain things to perfect its security interest, but did not impose any duty on it to perfect.

[¶10.] In aid of their position, plaintiffs advance the maxim *expressio unius est exclusio altreius,* the expression of one thing is the exclusion of another. *See* Accounts Mgmt., Inc. v. Litchfield, 1998 SD 24, ¶9, 576 NW2d 233, 236. Because the security agreement did not state that Carolina was obligated to perfect US Bancorp's security interest, according to plaintiffs, it was clearly US Bancorp's duty. Moreover, plaintiffs claim that the agreement was ambiguous and that it should have been construed against US Bancorp, which could have drafted it to have Carolina ensure that US Bancorp's security interest was perfected.

[¶11.] Although the contract did not specifically state that plaintiffs had a duty to ensure that the bank's security interest was perfected, it is clear that no duty was imposed upon US Bancorp to perfect. Perfection is for the benefit of the secured party. Plaintiffs concede as much in their appellate argument. In accord with their agreement, duties were imposed on plaintiffs to assist the bank if it chose to perfect. However, nothing mandated that the bank perfect. There was nothing ambiguous about their agreement, and, therefore, we need not consider whether it should have been construed against the drafter.

[¶12.] Finally, plaintiffs claim that because the contract documents were silent on procedures for titling of the trucks, the course of dealing between the parties should have controlled. According to plaintiffs, US Bancorp had a system for tracking all the titles on its various lease agreements. Plaintiffs insist that they relied on this course of dealing whereby US Bancorp would take steps necessary to

track the titles of the twenty trucks. Plaintiffs also claim that the clause prohibiting the supplanting or altering of the parties' agreement by their course of dealing was unconscionable and should not have been used against them.

[¶13.] The parties expressly agreed that the contract would not be qualified or supplemented by their course of dealing. Other than claiming that this clause was unconscionable, plaintiffs have not cited any UCC, Oregon, or South Dakota law that would invalidate such a clause.[2] *See* SDCL 15-26A-60(6); Vold v. Broin & Associates, Inc., 2005 SD 80, ¶9 n1, 699 NW2d 482, 485 n1 (citations omitted). Oregon and South Dakota law specifically permit the alteration of gap-filling rules. *See* OrRevStat 71.1020; SDCL 57A-1-102(3); UCC 1-102(3).

[¶14.] Affirmed.

[¶15.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.

---

2. The parties' agreement states that Oregon law applies. Plaintiffs argue that South Dakota law should apply because US Bancorp failed to assert Oregon law in the circuit court. While it is not clear from the record whether either party asserted Oregon law, the parties' agreement clearly states that Oregon law controls. Also, the circuit court recognized the applicability of Oregon law based on the parties' agreement and cited an Oregon statute.