Barbara KIENAST, Claimant
and Appellee,

v.

SIOUX VALLEY CO–OP, Employer
and Appellant.

No. 14796.

Supreme Court of South Dakota.

Submitted on Briefs May 23, 1985.
Decided July 10, 1985.

Nancy J. Turbak, Watertown, for claimant and appellee.

Thomas F. Burns of Gribbin, Burns & Eide, Watertown, for employer and appellant.

HENDERSON, Justice.

### ACTION

This is an appeal from the circuit court's reversal of a decision by the Secretary of the South Dakota Department of Labor (Secretary). The Secretary affirmed a determination by an Appeals Referee denying unemployment benefits to Claimant Barbara Kienast on the basis of misconduct. We reverse the circuit court and reinstate the original determination of the Appeals Referee, as the record discloses work-connected misconduct.

## FACTS

Barbara Kienast (Claimant) has been employed by Sioux Valley Cooperative (Sioux Valley) for a period of seventeen years with intermissions herein irrelevant. She was employed as a bookkeeper and knew all operations and procedures of Sioux Valley's bookkeeping department. Linda Pietz (Pietz) was also a bookkeeper and had been so employed by Sioux Valley since 1979. Pietz, however, did not know all of the bookkeeping department's operations and procedures. Sioux Valley is located in Watertown, South Dakota. Claimant and Pietz were the only employees in the bookkeeping department and they had a strained relationship.

At a Board of Directors' meeting on March 24, 1983, the Board presented Manager Russell Porath (Porath) with instructions on personnel items which included, inter alia, that both bookkeepers were to know all of the office duties and share the work role and that all employees were to bury the hatchet. Porath held an employee meeting that same day and read to them a "Want List" which included in part: "10. *BOTH* bookkeeper's [sic] will know all of the operations of the office. Including government reports and etc. 11. From this minute on all hatchets will be buried and everyone will get along...." Porath gave no further elaboration at this time about how both bookkeepers were to know all operations. Both Claimant and Pietz were present at this meeting.

On April 4, 1983, Claimant approached Porath to express her concern about taking responsibility for any errors that someone else might make on government reports. She also explained that if not done regularly, a person would not remember how to prepare the reports. Porath testified that he instructed Claimant to teach Pietz the procedures by showing the latter the reports, having Pietz do them and then check them over for correctness. Claimant testified, however, that when she left the meeting she felt the issue was "left hanging in the air" and that she should do what she thought best. This issue was never discussed again and neither Claimant nor Pietz approached the other about Pietz learning all office procedures.

In the middle of July 1983, Porath gave Claimant some delinquent accounts and told her to compile a list and send it to a local collection agency. Although this was usually done immediately, it was not so done this time. Both Claimant and Pietz were on vacation at one time or another and neither compiled a list and sent it to the collection agency. Claimant testified that she did not do this deliberately but was simply too busy to do it and was not instructed that it was a high-priority item.

On August 23, 1983, Claimant had not instructed Pietz and Porath terminated Claimant's employment with Sioux Valley. Claimant then applied for unemployment insurance benefits which the Department of Labor denied because Claimant's discharge had been for misconduct. Claimant appealed this determination and on November 18, 1983, a hearing was conducted before an Appeals Referee. The Appeals Referee decided that Claimant's discharge was for misconduct and that benefits should be denied. Principally, the misconduct was Claimant's failure to instruct Pietz on office procedures and additionally, her failure to forward a delinquent accounts list for collection as instructed. Claimant appealed this decision to the Secretary of Labor who affirmed the Appeals Referee's decision. Claimant then appealed the Secretary's decision to the circuit court. The circuit court, after hearing arguments and reviewing the transcript of the proceedings before the Appeals Referee, but hearing no testimony, reversed the Secretary's decision to deny benefits. The circuit court found "from the record that the findings of the Appeals Referee were clearly erroneous in many aspects." The circuit court more specifically found that Porath did not elaborate at the employee meeting about responsibilities for learning office procedures. It also found Porath's directive to be ambiguous and to be reasonably interpreted as requiring Pietz to learn by whatever sources were

available and that Claimant was never given a concise or cogent instruction to teach Pietz all office operations. Based on these findings, the circuit court's Conclusions of Law concluded that Claimant was not guilty of misconduct by failing to instruct Pietz or by failing to notify the collection agency of delinquent accounts. It therefore ordered that Claimant receive unemployment insurance benefits. From these determinations, Sioux Valley now appeals.

## DECISION

### I.

WAS THE APPEALS REFEREE'S DECISION THAT CLAIMANT HAD BEEN INSTRUCTED TO TRAIN PIETZ AND HAD FAILED TO CARRY OUT THAT DIRECTIVE CLEARLY ERRONEOUS?

Initially, we note our scope of review. In *Matter of South Dakota Water Management Bd.*, 351 N.W.2d 119, 122 (S.D.1984), this Court stated:

Prior to the amendment of SDCL 1–26–37, this court reviewed the record of an administrative agency in the same manner as the circuit court, guided by SDCL 1–26–36 and not bound by any presumption that the circuit court was correct. We would uphold a ruling or decision of an administrative agency unless we found that in light of the entire record the decision was clearly erroneous or we were left with a firm and definite conviction that a mistake was made. *Matter of Ackerson, Karlen & Schmitt*, 335 N.W.2d 342 (S.D.1983); *Deuter v. South Dakota Highway Patrol*, 330 N.W.2d 533 (S.D.1983).

On July 1, 1983, the following addition to SDCL 1–26–37 became effective: "The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo." In the recent decision of *State v. Miller*, 349 N.W.2d 42 (S.D.1984), we decided that despite the new language in the statute, this court still reviews the administrative decision essentially in the same manner as did the circuit court; the required deference to the circuit court has not changed.

The 1983 amendment aforesaid has not essentially changed the scope of review of this Court. Thus, our review is of the decision of the administrative agency and our standard is the clearly erroneous standard. If the circuit court reversed the agency's decision, and "[i]f after review of the evidence we deem the agency findings clearly erroneous, we affirm the circuit court. If the agency findings are not clearly erroneous, then the circuit court was clearly erroneous in so concluding." *State, Div. of Human Rights v. Miller*, 349 N.W.2d 42, 46 n. 2 (S.D.1984).

■ Conflicting evidence was presented as to whether Claimant had been instructed to teach Pietz office procedures which the latter did not know. Porath testified that at the employee meeting on March 24, 1983, he read the Board's directive that both bookkeepers were to know all office operations and that he thought he was spelling it out pretty clear that Claimant was to instruct Pietz. Porath further testified that on April 4th, when Claimant approached him, he instructed her to teach Pietz the office procedures by showing Pietz the reports and to check them over. Pietz also testified that during the employee meeting, Claimant was instructed to show Pietz how to make out the government reports. Claimant, on the other hand, testified before the Appeals Referee that she was not instructed to teach Pietz and that after talking with Porath on April 4th, she thought the issue was "left hanging in the air" and that she should do what she thought best. In fact, Claimant approached Porath to express her concern about errors Pietz might make on the government reports and to explain that if Pietz did not do these reports regularly, Pietz would not remember how to do them. Such action suggests a veiled attempt to complain about having to instruct Pietz.

■ In any event, the Appeals Referee heard the testimony and resolved the con-

flicts against Claimant by finding that she had been instructed to teach Pietz. The Supreme Court, in this case, is in exactly the same position that the circuit court found itself in, namely, reviewing transcripts and not taking evidence. We deem, after a review of this record, that the Appeals Referee's findings were not clearly erroneous. The record contains ample evidence to support the Appeals Referee and we are not left with a definite and firm conviction that a mistake has been made. *Fraser v. Water Rights Comm'n*, 294 N.W.2d 784 (S.D.1980). Thus, we reverse the circuit court's determination. The circuit court's decision was clearly erroneous in finding that the agency's findings were clearly erroneous. *State, Div. of Human Rights v. Miller*, 349 N.W.2d 42. One finding by the Appeals Referee was clearly erroneous, as conceded by counsel for the employer and appellant. This pertains to the finding that "[t]he claimant went on vacation and the federal reports became due and no one knew how to complete them and they were late. Help from another company had to be sought." This finding alone is not material to the decision of this case and does not mandate a reversal of the Appeals Referee. This error does not shake the accuracy of the germane findings.

## II.

### DID CLAIMANT'S FAILURE TO TRAIN A FELLOW EMPLOYEE CONSTITUTE MISCONDUCT DISQUALIFYING HER FROM UNEMPLOYMENT BENEFITS?

An unemployed person, discharged for work-connected misconduct, is not entitled to unemployment insurance benefits. SDCL 61–6–14. At the time of Claimant's discharge, this Court had defined misconduct by stating:

[M]isconduct [within the meaning of the unemployment compensation statutes] is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which

the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute.

*Matter of Yaroch*, 333 N.W.2d 448, 449 (S.D.1983) (citation omitted) (brackets in original).

The Appeals Referee concluded that Claimant's failure to instruct Pietz demonstrated a substantial disregard of her duties and obligations to the employer plus a substantial disregard of the employer's interests. Thus, he reasoned that her action constituted work-connected misconduct.

In *Matter of Johnson*, 338 N.W.2d 453, 454 (S.D.1983), this Court held an employee's refusal to undertake a work task assigned to her constituted misconduct which disqualified her from receiving unemployment benefits under SDCL 61–6–14. In *Gaunce v. Bd. of Labor Appeals, Employment Security Div.*, 164 Mont. 445, 524 P.2d 1108 (1974); *Westinghouse Elec. Corp. v. Unemployment Compensation Bd. of Review*, 29 Pa.Commw. 73, 366 A.2d 627 (1976); and *Unemployment Compensation Bd. of Review v. Homsher*, 21 Pa. Commw. 576, 347 A.2d 340 (1975), unemployment compensation benefits were denied for employees who refused to train fellow workers. Although in the present case, Claimant did not vocally refuse to train Pietz, her failure to do so after being so instructed was equivalent to a refusal and the Appeals Referee's decision that such was work-connected misconduct is upheld. Claimant had ample opportunity, from April through almost the entire

month of August, to take Pietz under her wing and train her. This misconduct alone was sufficient to deny Claimant unemployment benefits. Therefore, Claimant's failure to send the delinquent accounts list need not be so fully addressed. Suffice it to say, it is a busy world and perhaps she was taken up with a full schedule; conceding, also, that she did not deliberately fail to transmit the collection list, it nevertheless appears it was a substantial disregard of her employer's interests. A cardinal responsibility, assigned to her as a bookkeeper, was a procedure for collecting delinquent accounts.

Claimant further contends that unemployment benefits should not be denied because she was not forewarned and because Pietz was not also discharged. These contentions, however, are without merit. This would cast an onerous burden on employers which we cannot, in fairness, countenance. Forewarning is not contemplated by the statute and Claimant is not shielded by any action or inaction taken against a fellow employee. Claimant's case rises or falls on its own merits.

Reversed.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.