1996 SD 50

**Richard ABILD and Kevin
Connelly, Claimants,**

v.

**GATEWAY 2000, INC., Employer
and Appellant.**

No. 19333.

Supreme Court of South Dakota.

Considered on Briefs March 11, 1996.

Decided May 8, 1996.

Drew C. Johnson, Assistant Attorney General, South Dakota Department of Labor, Aberdeen, for appellee South Dakota Department of Labor.

Cheryle Wiedmeier of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for employer and appellant.

KONENKAMP, Justice.

[¶ 1] Two employees fired for misuse of the company telephone were awarded unemployment benefits. The employer appeals and we affirm.

### Facts

[¶ 2] On July 21, 1994, Richard Abild and Kevin Connelly were discharged from employment as sales representatives for Gateway 2000, Inc. Each filed unemployment claims, but the South Dakota Unemployment Insurance Division denied benefits based on a finding of work-connected misconduct. They appealed. After a consolidated hearing, the Department of Labor found Abild and Connelly eligible for unemployment benefits.[1] The circuit court affirmed.

[¶ 3] Gateway manufactures and sells computer products. Its computer sales are accomplished primarily over the telephone through sales representatives, such as Abild and Connelly. These salespersons have daily quotas, including making twenty new phone calls, with a total of ninety phone calls per day, maintaining a minimum of 5.5 hours on the telephone, spending seventy-five percent of their time on the phone and maintaining a specified sales volume. Each sales representative meets with a supervisor once a month for a "one-on-one" discussion. At the meeting employees initial a form summarizing their production in the previous month and their goals for the next month. In July 1994, the month Abild and Connelly were discharged, Gateway revised its "one-on-one" forms. The new forms warn employees to

---

1. Two other claimants were included in the consolidated hearing. They were also denied unemployment benefits and the Department affirmed their denial. That decision was not appealed.

use correct phone procedure which "includes not calling our 800 number." Gateway contended the old forms its employees initialed also contained this warning. Yet it had purged all its old records, so Gateway was unable to produce any forms initialed by Abild or Connelly, and both denied ever having seen a form with this warning. The employee handbook simply provided that honesty is expected of all employees and employees are not to falsify company records.

[¶ 4] Gateway has a toll-free 800 number for its customers. When put on hold, customers listen to music. Sales representatives have three phone lines at their work stations. In July 1994, Gateway conducted a ten-day audit of its phone lines to learn whether employees were using the phone system to falsify sales records. The investigation revealed that many employees were manipulating telephone calls to improve their statistics: they called for messages using an outside line or dialed the 800 number and placed themselves on hold, thus augmenting their phone quotas. Employees were required to check voice mail messages periodically each day. To check for messages they dialed a four digit inhouse extension number, but by dialing an outside number to access messages, employees improved their statistics. Ten employees were eventually discharged. Abild and Connelly had not misused the voice mail system, but Abild had called the 800 number nine times in three days, totaling 95 minutes of on-line time; Connelly called thirteen times in five days for a total of 93.8 minutes.[2]

[¶ 5] Abild and Connelly denied using the telephone to manipulate their statistics. Their reason for calling the 800 number and putting themselves on hold was to listen to music through their headsets during free times or while completing required paperwork. Both were top sales representatives who had no difficulty meeting all their daily expectations of phone calls and required on-line time. Furthermore, no evidence was presented to show they received any additional compensation due to the added on-line time.[3] Gateway believes the employees knew that using the 800 number was not correct phone procedure, that doing so manipulated their on-line statistics, incurred additional telephone charges, and was detrimental to Gateway because lines were unavailable for incoming calls from its customers. To Gateway, these intentional actions establish "misconduct" and the employees should not receive unemployment benefits. Gateway appeals raising the following issues:

I. Whether the Department's factual findings were clearly erroneous.

II. Whether the Department erred in finding the employees did not commit "misconduct" as defined in SDCL 61–6–14.1.

## Standard of Review

[¶ 6] We review administrative decisions in the same manner as the circuit court. Factual findings can be overturned only if we find them to be "clearly erroneous" after considering all the evidence. SDCL 1–26–36; *Permann v. South Dakota Dept. of Labor*, 411 N.W.2d 113, 117 (S.D.1987). Unless we are left with a definite and firm conviction a mistake has been made, the findings must stand. The question is not whether there is substantial evidence contrary to the findings, but whether there is substantial evidence to support them. Conclusions of law are fully reviewable, as are mixed ques-

---

2. Gateway argues all four claimants were similarly situated and thus, the Department must be clearly erroneous because it awarded benefits to Abild and Connelly and denied benefits to the other two claimants. However, the Department apparently found a critical distinction between calling the voice mail system and the 800 number. The former was clearly intended to enhance quotas; the latter did not benefit Abild and Connelly. The other two employees were denied benefits because the Department found they intentionally used an outside line to call the voice

mail system to enhance their phone statistics, something neither Abild nor Connelly did.

3. On certain days, incentive bonuses were offered to sales representatives for the sale of particular products. In order to qualify for a bonus, a minimum of 4.5 hours per day of on-line telephone time was required. Although the audit reflected a higher incidence of phone misuse on bonus days, no evidence was presented to show Abild or Connelly qualified for a bonus because of the increased on-line time.

tions of fact and law that require the application of a legal standard. *Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 896 (S.D. 1995) (citations omitted).

## Analysis

[¶ 7] **I.  Whether the Department's factual findings were clearly erroneous.**

[¶ 8] Gateway contends several factual findings made by the Department were clearly erroneous. It first argues Abild and Connelly were told through the employee handbook that honesty is expected of all employees; if Abild and Connelly acted dishonestly, the Department must be clearly erroneous. Gateway's assertion is merely a legal conclusion, which cannot support an inference the Department was clearly erroneous. Both employees testified they did not know listening to music over the phone was against company policy. The referee found their explanations believable.

[¶ 9] Gateway also argues the Department was clearly erroneous because the monthly "one-on-one" forms declared employees were not to use the phone system to call themselves. Gateway produced little evidence that Abild or Connelly had actually seen or initialed "one-on-one" forms with this instruction. The "one-on-one" form was revised the same month Abild and Connelly were discharged. Gateway purged its personnel files of prior initialed forms, hence no pre-July 1994 initialed forms were produced. While there is conflicting testimony on whether the pre-July 1994 forms had the 800 number admonition, both Abild and Connelly testified they had not seen the "one-on-one" forms with the alleged warning nor were they informed to refrain from using the 800 number to call themselves. The Department weighed the conflicting testimony and chose to believe Abild and Connelly. After hearing and observing witnesses, the Department was in a better position to find the truth than are we on appeal. *Permann*, 411 N.W.2d at 117. Based upon our review of the record, we cannot say the Department was clearly erroneous.

[¶ 10] Finally, Gateway insists Abild and Connelly knew their 800 number telephone calls would enhance their on-line statistics. For support, Gateway states Abild "admitted that he was aware that misusing the phone manipulated his personal statistical report." This admission was equivocal, however. The statement was typed on a disciplinary form Gateway prepared before Abild's discharge. The form was handed to Abild and he responded in the "employee response" portion of the form by writing, "I guess I don't agree with the sentences above or what has been told to me by the managers and I don't believe I should sign this before I talk to [an] Attorney but they said I have to sign it now." The evidence is similarly conflicting regarding Connelly. Consistent with these denials was their testimony at the administrative hearing where they disclaimed knowing that calling the 800 number would increase their on-line time. The Department found their rationale for calling the 800 number to listen to music credible.[4] This explanation was also bolstered by Gateway's inability to show that either Abild or Connelly financially benefited from these calls.

[¶ 11] We cannot reverse merely because we find a conflict in the evidence, nor can we substitute our judgment for that of the Department, unless we are left with a definite and firm conviction a mistake has been made. *Schuck*, 529 N.W.2d at 896; *Kienast v. Sioux Valley Co-op.*, 371 N.W.2d 337, 340 (S.D.1985). Substantial evidence exists to support the Department's factual findings. *Kienast*, 371 N.W.2d at 340.

[¶ 12] **II.  Whether the Department erred in finding the employees did not commit "misconduct" as defined in SDCL 61–6–14.1.**

[¶ 13] An employee whose "misconduct" results in discharge is disqualified from receiving unemployment benefits. SDCL 61–6–14. What constitutes misconduct is a question of law. *Rasmussen v. South Dakota Dept. of Labor*, 510 N.W.2d 655, 657 (S.D.1993). Employers have the

---

4.  Gateway contends radios were authorized for employees to use while at their desks and hence it was clearly erroneous for the Department to find the music explanation plausible. However, radios were allowed only before or after business hours, whereas an employee could listen to music through his phone headset by calling the 800 number during business hours.

burden of showing by a preponderance of the evidence that an employee committed misconduct. *Id.* Misconduct is defined in SDCL 61–6–14.1:

(1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or

(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or

(3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or

(4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability or wrongful intent.

However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, a good faith error in judgment or discretion, or conduct mandated by a religious belief which belief cannot be reasonably accommodated by the employer is not misconduct.

[¶ 14] Unemployment benefits are designed to relieve economic insecurity resulting from the loss of one's job, consequently unemployment statutes are liberally construed in favor of the claimant. *In re Kotrba*, 418 N.W.2d 313, 315 (S.D.1988); *Red Bird v. Meierhenry*, 314 N.W.2d 95, 96 (S.D. 1982). In this appeal, the propriety of Gateway's decision to discharge its employees is not an issue; we only consider whether the employees' actions form misconduct under the statute. *In re White*, 339 N.W.2d 306, 307 (S.D.1983).

[¶ 15] Gateway argues its financial interests were "completely disregarded" because telephone lines otherwise available for customer calls were appropriated to listen to music and it cost nine cents a minute for use of the 800 number. Abild's actions cost Gateway $8.55 ($.09/minute × 95 minutes) and $8.44 ($.09/minute × 93.8 minutes) for Connelly. "[M]ere inefficiency, unsatisfactory conduct, ... good faith error in judgment or discretion ... is not misconduct." SDCL 61–6–14.1. The Department found Abild's and Connelly's actions negligent, amounting to a good faith error in judgment. We uphold the finding that their actions did not rise to the level of statutory "misconduct" for purposes of denying them unemployment compensation.

[¶ 16] Finally, Gateway argues it had no duty to forewarn its employees that conduct inimical to the employer's benefit will result in discharge; therefore, the Department's finding that Abild and Connelly did not make the 800 number calls to enhance their phone statistics is immaterial to a legal determination of misconduct. Gateway cites *Kienast*, 371 N.W.2d at 341, for this principle. *Kienast* is distinguishable because there the employee was specifically told to perform a task and she failed to do it. *Id.* at 340–41. We rejected the employee's argument that she should have been forewarned her failure to perform the task would result in discharge. *Id* at 341. Here the employees never argued an absence of forewarning, only that the employer failed to adequately inform them of its telephone policy. Unknowingly violating policy classifies more as a "good faith error in judgment" than "misconduct" under SDCL 61–6–14.1.

[¶ 17] Affirmed.

[¶ 18] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

