2000 SD 104

**Robert WEEKS, Plaintiff and Appellee,**

v.

**VALLEY BANK, Defendant and Appellant.**

**No. 21220.**

Supreme Court of South Dakota.

Considered on Briefs April 24, 2000.

Decided Aug. 9, 2000.

David O. Carter, Sioux Falls, Attorneys for plaintiff and appellee.

Cheryle Wiedmeier Gering, Davenport, Evans, Hurwitz & Smith, Sioux Falls, Attorneys for defendant and appellant.

Drew C. Johnson, Special Assistant Attorney General, Aberdeen, Attorney for South Dakota Department of Labor, Unemployment Insurance Division.

KONENKAMP, Justice.

[¶ 1.] Valley Bank discharged Robert S. Weeks as its trust officer. He applied for and received unemployment benefits. On appeal, the bank argued that Weeks was discharged for work-related misconduct. The Department of Labor ruled that his performance did not amount to misconduct under the unemployment insurance statutes. The circuit court affirmed, and we affirm.

### Background

[¶ 2.] Houston Haugo, Valley Bank's President and CEO, hired Weeks in 1993

to serve as senior trust officer. In the newly formed trust department, Weeks and a secretary made up the entire staff. Over the years, Haugo and Weeks discussed the prospect that the department might evolve into an independent trust company, but that never materialized. The department showed no profit in the five years Weeks worked there. Instead, it accumulated losses exceeding $400,000.

[¶ 3.] Weeks was allowed three weeks a year in paid vacation. In late 1997, he submitted a "vacation/time off request and approval" form, requesting vacation for the dates of November 26, 28, December 23, 24, 26, 29, 30, 31, and January 2, 5, 6, and 7. This form, used by all bank employees, states at the top: "To assist in scheduling vacations/time-off, please ... return at least 30 days prior to vacation/time-off start date." Haugo responded to the request in a letter to Weeks dated November 17:

> Our records show you have 30 hours left for vacation time and I noticed you had also taken unpaid leave. Valley Bank discourages vacation days around the holidays and especially before and after the holiday like Thanksgiving so — Friday is ok, but Wednesday is not and that gives you 22 vacation hours left for the rest of the year.
>
> I also would believe that the trust department needs you around for year end business of its customers and to answer questions that Laurie is not equipped to answer.

[¶ 4.] Weeks responded two days later in a letter stating that he had made his plans for family holiday get-togethers nearly six months earlier. He had purchased tickets that were neither refundable nor exchangeable. He explained that to be with family on the East Coast on Thanksgiving, travel on Wednesday was necessary, and that the Christmas trip was planned to coincide with his son's engagement announcement. Weeks told Haugo that he would arrange to be accessible by phone in case a question should come up at the trust department, and he would be available to talk to any clients needing information while he was gone. In closing, he wrote: "Sorry if this has caused a problem. I was not aware of the vacation policy against taking the Wednesday before Thanksgiving, but in the future I will schedule accordingly." Haugo wrote in response:

> Vacation requests are just that requests not notification by employees of when they are going to take vacation/unpaid leave so that the employer can schedule the running of the company. You have five more days' vacation the [sic] I previously indicated so schedule them with Gert [head of payroll] and take the rest unpaid.
>
> I am concerned in getting the Trust department going and building it stronger and hopefully more profitable. That means that we need someone of [sic] the job not on vacation or unpaid leave. In a one-man department we need that one person to be very aggressive and develop business. That's when I question the amount of time off and timing of this leave.

Weeks took the vacation.

[¶ 5.] On March 23, 1998, Haugo distributed a one-page memo to all staff explaining that "Vacation requests should be in by 3-1-98 every year to Houston." In a paragraph titled "rules," the memo stated in part: "Days off before & after Holidays are not looked upon favorably, and especially the Tuesday after a Monday Holiday."

[¶ 6.] Weeks submitted another request for vacation/time off on May 4, 1998. He selected May 18—22, 25, and 26. The date of May 25, Memorial Day, was circled on the form, with the words "pd Holiday" written beside it. Haugo denied the request, writing the word "No!" across the form and signing it. Weeks responded to the denial with a letter to Haugo dated May 13:

When I turned in the form, I believed that I was following all procedures. Following your directions in a memo to Laurie regarding vacation scheduling, I had requested the vacation two weeks ahead. I also understand that these are days which I will be taking without pay, as has been the procedure before.

Houston, I purposely scheduled this vacation, an anniversary cruise for M.J. and myself, during non summer months, thinking there would be fewer requests for vacation during this non peak time. The cruise has been fully paid for, and is not refundable.

Sorry if this has in any way caused a problem.

Haugo responded in a letter dated May 14:

My reason for turning down your request is due to the condition of the Trust Department! As has been said, "You don't leave a sick child," – paid or unpaid. We need someone on premises building business. We need to kick this department, (hopefully Ind. Company – someday), in the rear.

Our policy is 30 days before a trip, or before you buy the tickets & /or make the reservations. This is just logical.

Weeks nevertheless took the time off. He returned to work on May 27.

[¶ 7.] On July 17, 1998, Weeks was terminated from his position. As of that time, he had used his three weeks of vacation and had taken ten additional unpaid days off. He filed a claim for unemployment insurance benefits. Valley Bank resisted on the ground that the dismissal was for work-related misconduct. Weeks was granted benefits. The bank appealed, and a hearing was held before an ALJ

for the Department of Labor. The Department affirmed the grant of benefits, and Valley Bank appealed to the circuit court. The circuit court affirmed the Department's decision. Valley Bank now appeals to this Court with two issues: (1) Was Weeks discharged for work-related misconduct and therefore not entitled to receive unemployment compensation benefits? (2) Is Valley Bank's experience-rating account subject to charge for benefits paid to Weeks? [1]

### Standard of Review

 [¶ 8.] We review administrative decisions in the same manner as the circuit court. Factual findings may be overturned only if they are found to be "clearly erroneous" after all the evidence has been considered. SDCL 1–26–36; *Abild v. Gateway 2000, Inc.,* 1996 SD 50, ¶ 6, 547 N.W.2d 556, 558. The findings will not be disturbed unless we are left with a definite and firm conviction a mistake has been made. *Sopko v. C & R Transfer Co., Inc.,* 1998 SD 8, ¶ 7, 575 N.W.2d 225, 229. Conclusions of law, as well as mixed questions of fact and law that require the application of a legal standard, are fully reviewable. *Schuck v. John Morrell & Co.,* 529 N.W.2d 894, 896 (S.D.1995) (citations omitted). Whether an employee's actions constitute misconduct is a question of law. *Rasmussen v. South Dakota Dept. of Labor,* 510 N.W.2d 655, 657 (S.D.1993).

### Analysis and Decision

[¶ 9.] Persons discharged for work-connected misconduct are disqualified from receiving unemployment benefits. SDCL 61–6–14.[2] Misconduct is defined in SDCL 61–6–14.1:

As used in this chapter, misconduct is:

---

1. SDCL 61–5–29 provides that an employer's experience-rating account is to be "charged with all benefits chargeable...." Benefits are not payable, however, if the employee "[w]as discharged or suspended for misconduct connected with the employment, ..." As we conclude in Issue 1 that Weeks was not discharged for misconduct, and none of the other exceptions in the statute apply, Valley

Bank's experience-rating account is subject to charge.

2. SDCL 61–6–14 provides in part: "An unemployed individual who was discharged or suspended from his most recent employment, such employment being at least thirty calendar days in duration for misconduct connected with his work shall be denied benefits...."

(1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or

(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or

(3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or

(4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability or wrongful intent. However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, a good faith error in judgment or discretion, or conduct mandated by a religious belief which belief cannot be reasonably accommodated by the employer is not misconduct.

Valley Bank argues that Weeks engaged in misconduct within the meaning of this statute; thus, he should not receive unemployment benefits.

[¶ 10.] The record reveals a substantial dispute of fact on the reason for Weeks' termination. As the employer, the bank must establish by a preponderance of the evidence that the discharge was for work related misconduct. *Abild*, 1996 SD 50, ¶ 13, 547 N.W.2d at 559–60. Valley Bank contends that the termination was for poor performance related to excessive time off: Weeks violated company policy and a direct order to not take time off from work in May 1998. These asserted violations include (1) Weeks' failure to submit a request thirty days before the requested time off; (2) taking time off before and after a Monday holiday; and (3) taking time off without permission.

[¶ 11.] Weeks points out that he was not fired until nearly two months after the May occurrence and the only reason given was that he was not making money for the trust department. The record reveals no letter or other contemporaneous document setting forth the reason for termination. According to Weeks, the bank did not come up with its current reason until it appealed.

[¶ 12.] It is the Department's responsibility to judge the credibility of witnesses and choose between conflicting versions. *Wagaman v. Sioux Falls Constr.*, 1998 SD 27, ¶ 29, 576 N.W.2d 237, 242–43 (citing *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 235 (S.D.1994)). Here, the Department heard testimony and reviewed evidence presented by both sides. It concluded that the bank discharged Weeks "for his poor performance in operating the trust department as demonstrated by his failure to make a profit after nearly [five] years as head of the department." It chose to believe Weeks, rather than accept the bank's claim that a major reason for firing Weeks was his disobedience of vacation rules, emphasizing that there was a two-month gap between Weeks' last day away and his termination.

[¶ 13.] From our examination of the record it is difficult to see how the Department was clearly erroneous. The finding that Weeks was not terminated for disregarding his employer's vacation policy, but instead for failing to make his department profitable, is supported by the evidence of past communications between Haugo and Weeks. Behavior may be explained by a course of dealing: "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." E. Allan Farnsworth, Contracts § 7.13, at 528 (2nd Ed. 1990) (citation omitted).

[¶ 14.] The bank's policy concerning days off was not strictly enforced. Haugo would deny paid time off or express displeasure over the days requested, yet he allowed Weeks to take the time away from the office unpaid. In effect, Haugo ac-

quiesced in Weeks' practice in the past, and the bank has not shown why the May 1998 episode ought to be viewed differently.[3] If it should, certainly waiting two months to respond with a termination notice leaves considerable doubt. To the Department, the delay signified that the vacation issue was not the reason for dismissal. We can find no clear evidence in the record to contradict that finding.

[¶ 15.] If the real reason for discharge was Weeks' failure to obtain a profit for the trust department, this will not meet the definition of misconduct in SDCL 61–6–14.1. Unemployment statutes are construed liberally in favor of claimants. *Abild*, 1996 SD 50, ¶ 14, 547 N.W.2d at 560 (citations omitted). Whether Weeks was properly discharged is not for us to decide; rather, we simply examine the conduct to see if it fits within the statutory definition. *Id.* (citing *In re White*, 339 N.W.2d 306, 307 (S.D.1983)). Failure to make a profit for the trust department does not amount to "[s]ubstantial disregard of the employer's interests or of the employee's duties and obligations to his employer." SDCL 61–6–14.1(2).

[¶ 16.] Despite the bank's claim that Weeks' absences correlate with the trust department's failure to thrive, no evidence of cause and effect can be found in the record. As we explained in *Raml v. Jenkins Methodist Home:*

> [M]isconduct [within the meaning of the unemployment compensation statutes] is limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employees, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil de-

sign, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertancies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute.

381 N.W.2d 241, 243 (S.D.1986) (alteration in original) (quoting *In re Yaroch*, 333 N.W.2d 448, 449 (S.D.1983)). The Department ruled that the bank did not prove any willful or deliberate wrongdoing or disregard of the bank's interests. It also concluded that Weeks' deficiencies did not constitute carelessness or negligence amounting to willful and intentional misconduct. Instead, the Department characterized his work as substandard, "but not exceptionally so," and his negligence as "ordinary negligence."

[¶ 17.] Conceding the Department's findings of fact, there being no showing that they were clearly erroneous, we conclude that Weeks did not refuse to undertake an assigned task. *See Kienast v. Sioux Valley Co-op.*, 371 N.W.2d 337 (S.D.1985). In *Kienast*, even though there was no express, verbal refusal by the employee to perform the task, failure to perform the assigned job of training a fellow worker, amounted to a refusal and was "a substantial disregard of her duties and obligations to the employer plus a substantial disregard of the employer's interests." *Id.* at 340. The employee's misconduct was held to be sufficient to deny the claimant unemployment benefits. *Id.* at 341. The facts are also distinguishable from those in *Yaroch*, where the employee was terminated for taking too long to accomplish, or not

---

3. In addition to the vacation incident in 1997, another example of this course of dealing is a letter Haugo wrote to Weeks on December 20, 1993: "I have just received your vacation request from December 22 to January 3. Currently you have exactly three days of vacation while your vacation request is for 6 days. To correct this oversight you will have 3 days of paid vacation with 3 days off without pay."

completing at all, assigned tasks such as shoveling snow and changing lightbulbs. 333 N.W.2d at 449. The employee admitted that his "supervisor had given approximately six 'harsh ... full force commands ... to pick up the work.'" *Id.* at 450 (omissions in original).

[¶ 18.] It has not been shown that Weeks intentionally failed to obtain a profit for the trust department. As our unemployment laws are to be interpreted liberally in favor of the claimant, we agree with the Department that Weeks' actions did not fall to the level of misconduct as defined in the statute.

[¶ 19.] Affirmed.

[¶ 20.] MILLER, Chief Justice, and SABERS and GILBERTSON, Justices, concur.

[¶ 21.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 22.] I respectfully dissent.

[¶ 23.] Under SDCL 61–6–14, "an unemployed individual who was discharged ... for misconduct connected with his work shall be denied [unemployment] benefits...." Misconduct is defined under SDCL 61–6–14.1 as,

(1) *Failure to obey orders, rules or instructions,* or failure to discharge the duties for which an individual was employed; or

(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or

(3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or

(4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability or wrongful intent.

However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, a good faith error in judgment or discretion, or conduct mandated by a religious belief which belief cannot be reasonably accommodated by the employer is not misconduct. (Emphasis added.)

This Court has further defined "misconduct" within the meaning of unemployment compensation as,

conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Matter of Yaroch,* 333 N.W.2d 448, 449 (S.D.1983) (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941)).

[¶ 24.] A common principle exists that "[a]n employer has the right to expect an employee to follow reasonable orders or instructions." *See Jorgensen v. Banta Direct Mktg., Inc.,* 1996 WL 91672, *3 (Minn. App.); *Myers v. Iowa Dep't of Job Serv.,* 373 N.W.2d 507, 510 (Iowa Ct.App.1985); *Little v. Larson Bus Serv.,* 352 N.W.2d 813, 815 (Minn.Ct.App.1984) (citation omitted). Further, "if the employer's request is reasonable and does not impose an unreasonable burden on the employee, an employee's refusal to comply constitutes misconduct." *Jorgensen,* 1996 WL 91672 at *3. When an employee commits insubordination by committing, on numerous occasions, deliberate refusals to obey the employer's orders, such conduct constitutes misconduct. *See id.*

[¶ 25.] In the present case, Weeks requested vacation time on two separate occasions. Both requests were met with dis-

approval by Weeks' employer. Despite employers' specific denial of Weeks' requested vacation time, Weeks took the vacation time anyway. It is undisputed that Weeks' requested vacation time was denied by his employer and Weeks took the vacation anyway. This is clearly a "failure to obey orders, rules or instructions" of an employer by an employee and clearly constitutes misconduct under SDCL 61–6–14.1(1). Weeks' failure to abide by his employer's denial of the vacation request has to constitute failure to obey an order, i.e., misconduct. *See, e.g., Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 417 (Minn. Ct.App.1986) (noting that even "a single absence from work may constitute miscon-duct when an employee has not actually received permission to be absent"). Such conduct by Weeks evinces a willful and wanton disregard of his employer's interests in favor of his own interests and is behavior which an employer should not have to accept.

[¶ 26.] I would hold that the facts in this case warrant a disqualification of unemployment compensation.