#30092-r-SPM
**2023 S.D.27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JEFFREY BANKSTON,                                    Claimant and Appellee,

    v.

NEW ANGUS, LLC, D/B/A
DEMKOTA RANCH BEEF,                          Employer and Appellant,

    and

SOUTH DAKOTA REEMPLOYMENT
ASSISTANCE DIVISION,                               Agency and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRISTINA L. KLINGER
Judge

\* \* \* \*

MORGAN F. BREKKE
ANDREW R. DAMGAARD of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota            Attorneys for employer
                                         and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 21, 2023
OPINION FILED **06/21/23**

* * * *

SETH A. LOPOUR of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota

Attorneys for agency and
appellant.


BRAD J. LEE
CONOR P. CASEY of
Beardsley, Jensen & Lee, Prof. LLC
Rapid City, South Dakota

Attorneys for claimant
and appellee.

#30092

MYREN, Justice

[¶1.] New Angus LLC d/b/a Demkota Ranch Beef (New Angus) and the South Dakota Department of Labor and Regulation Reemployment Assistance Division (RA division) appeal a circuit court decision reversing an Administrative Law Judge's (ALJ) decision which determined Jeffrey Bankston was disqualified from receiving reemployment assistance benefits because he was discharged for work-connected misconduct as defined by South Dakota reemployment assistance law. We reverse and remand to the circuit court to remand to the ALJ to enter a new proposed decision that includes findings of fact that are sufficient for appellate review.

## Facts and Procedural History

[¶2.] New Angus is a beef processing facility in Aberdeen, South Dakota. Bankston began working as a journeyman electrician at New Angus on November 8, 2016. He was 74 years old when the events of this case transpired. Diamond Sturdevant worked in the inventory department at New Angus. An employee bystander witnessed an event between Bankston and Sturdevant and reported it to the Human Resources (HR) Department.[1] After an investigation by HR, New Angus terminated Bankston on March 22, 2021. Bankston then filed a claim for reemployment assistance benefits. After reviewing Bankston's claim application and the information provided by New Angus about its reasons for discharging Bankston, the RA division issued an initial determination that Bankston was

---

1. The bystander did not testify in subsequent proceedings.

discharged for misconduct and was disqualified from receiving reemployment benefits.

[¶3.]     Bankston appealed that initial determination and was represented by counsel at a telephonic evidentiary hearing before an ALJ from the Office of Hearing Examiners. Kelly Comstock, the current HR manager at New Angus, represented New Angus and testified. *See* SDCL 61-7-22 (providing that an employer may be represented by an employee before the department). Robert Sullivan, New Angus' Environmental Health and Safety Manager, who had reviewed workplace surveillance videos, also testified on behalf of New Angus. Sullivan testified that the videos depicted several occasions in which Bankston hugged Sturdevant and on one occasion stroked her hair.[2] Sturdevant and Bankston both testified. Bankston called coworkers Allen Hieb, Elijah Srstka, and Quentin Timm. The ALJ received the claims file (including the New Angus harassment policy and the questionnaires completed by Bankston and New Angus) into the hearing record.

[¶4.]     The New Angus harassment policy "prohibits sexual harassment or harassment based on race, color, religion, gender, national origin, veteran status, age, disability, or other protected classification . . . ." The policy defines harassment "as verbal or physical conduct that denigrates or shows hostility toward an individual because of his/her race, color, religion, gender, national origin, veteran status, age, sex, disability, or other trait protected by federal or state law, and that creates an intimidating, hostile, or offensive working environment." The policy says

---

2.     New Angus did not present the video surveillance evidence to the ALJ.

that "[s]exual harassment can consist of unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that creates an offensive or hostile work atmosphere."

[¶5.] Because Comstock had not worked for New Angus when Bankston was discharged, her information about Bankston's discharge came from her review of his employment file and a discussion with Sturdevant. Comstock testified that Bankston was "no longer working [for New Angus] due to an incident where he hugged and kissed a teammate. It was unwanted. And when she said no, he gave her a hard time asking her questions like, 'Are you pregnant or is it your period?'"

[¶6.] Sturdevant testified that a month or two after she began working for New Angus, Bankston started to hug her. She explained that he initially talked to her as if he was her grandpa, but the nature of Bankston's hugs changed over time and the physical contact and comments became more sexual. She testified "he would put his arms inside [her] jacket" and "rub the small of [her] back." Additionally, she testified that he began making sexually charged comments to her, such as calling her "Sweetie" and "Honey." She also claimed Bankston kissed her neck and asked her inappropriate questions, such as "Did you get lucky? Have you gotten some? Is your hubby loving on you right?" She testified that these questions made her feel "[v]ery uncomfortable." The conduct alleged by Sturdevant culminated with an incident on March 11, 2021, which Sturdevant described in the following testimony:

> On that day I remember it was early in the morning. It was me, Jeffrey and Corey McIntosh in the supply room working. And I was by the counter and Jeffrey had asked me for a hug. And I said, [n]o, no hugs today. And he said, [w]hy? Are you on your --

are you pregnant? And I said, [n]o. And he said, [a]re you on your period? And I said, [n]o. It doesn't matter. I don't want a hug.

[¶7.]     In his testimony, Bankston described how his hugging with Sturdevant began: "Diamond told me that she knew the pain I was in with my dislocated shoulder and torn rotary cuff, that her dad had went through it, and she gave me a hug. And then we just hugged every day out of kindness." Bankston denied that he had ever kissed Sturdevant. He also denied making any inappropriate comments to Sturdevant. He testified that it was his practice to give co-employees hugs and that he had never received any complaints about greeting people with hugs during his employment with New Angus.

[¶8.]     Allen Hieb testified that every day he and Bankston would shake hands or give each other "a shoulder hug," which he described as putting an arm on the top of another's shoulder as a manner of greeting, and that he had seen Bankston give other employees hugs. Hieb also testified that he witnessed members of the HR department give each other hugs, "especially like if something was wrong or if they needed a cheer up[.]" He described these hugs as "shoulder to shoulder" rather than "an embracing hug." Hieb testified that he had never heard Bankston make inappropriate remarks or seen him give kisses. Elijah Srstka testified that he had seen Bankston hug other employees and that it was "fairly common to see" other employees hug each other while at work. Finally, Quentin Timm testified that "I have hugged [Bankston], but other than that, you know, I might have given like Allen Hieb or maybe another guy like, you know, the whole

Spartan handshake or the, you know, half embraces we've been talking about." He testified that he had seen hugging by other employees ("both guys and gals").

[¶9.] The ALJ issued a proposed decision that consisted of findings of fact, a reasoning section, and conclusions of law determining that Bankston was disqualified from receiving reemployment assistance benefits because he was discharged for work-related misconduct as defined by SDCL 61-6-14.1.[3] The ALJ's findings were extraordinarily sparse. Notably, the ALJ did not make any findings regarding Sturdevant's allegations that Bankston kissed her, made inappropriate sexual comments to her, or reached inside her jacket while giving her hugs. Instead, the ALJ briefly described what occurred in his reasoning section:

> Claimant had a habit of hugging other employees. One witness credibly testified that it made her feel uncomfortable. Unwanted physical contact between employees is a substantial disregard of Employer's interests. Additionally, during the Covid era, any kind of physical contact was discouraged for

---

3. SDCL 61-6-14.1 defines misconduct, for the purpose of determining an employee's qualification for reemployment assistance, as:

> (1) Failure to obey orders, rules, or instructions, or failure to discharge the duties for which an individual was employed; or
> (2) Substantial disregard of the employer's interests or of the employee's duties and obligations to the employer; or
> (3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee; or
> (4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability or wrongful intent.
>
> However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, a good faith error in judgment or discretion, or conduct mandated by a religious belief which belief cannot be reasonably accommodated by the employer is not misconduct.

> health and safety reasons (an internal outbreak could shut down a business). The evidence establishes that Employer discharged Claimant for work-connected misconduct as defined by law.

On December 21, 2021, the Department of Labor (DOL) adopted the ALJ's proposed decision as its final decision.

[¶10.] Bankston appealed the decision of the DOL to the circuit court. Following oral argument, the circuit court determined that the ALJ's factual finding regarding COVID-19 was clearly erroneous. It noted that "[t]he [ALJ] received no evidence that [New Angus] discouraged physical contact due to the COVID-19 pandemic, and neither party argued that [New Angus] spoke to its employees about the COVID-19 pandemic[.]"

[¶11.] The circuit court then addressed the factual basis of the DOL's determination that Bankston committed misconduct. It noted that although "the [ALJ] found that Sturdevant credibly testified that the hugging made her uncomfortable, it did not address her allegations that Bankston kissed her, put his arms into her coat, asked sexually inappropriate questions, nuzzled into her neck, or made inappropriate comments when a hug was refused." Based on the transcript from the administrative hearing, the circuit court observed that the ALJ "was presented with conflicting testimony as to what Bankston's conduct was, and found that Bankston had a habit of hugging. It did not find that he kissed Sturdevant's neck, nuzzled her neck, placed his hands in her coat, or gave aggressive hugs." Because the ALJ only made findings about hugging and premised its decision on that finding, the circuit court limited its misconduct analysis "to whether Bankston's hugging of other employees constituted such."

[¶12.]     The circuit court then concluded that Bankston's habit of hugging did not constitute misconduct under three alternative theories. First, the circuit court concluded that Bankston's hugging did not constitute misconduct under SDCL 61-6-14.1. The circuit court disagreed with the ALJ's conclusion that Bankston's conduct constituted a "substantial disregard of the employer's interests." *See* SDCL 61-6-14.1(2). The circuit court noted that several employees, in addition to Sturdevant herself, had testified that hugging was common in the workplace and that New Angus never told employees that hugging was prohibited. Based on these observations, the circuit court reasoned that because New Angus never warned Bankston and other employees that hugging violated company policies, it was not a conscious disregard of what New Angus had a right to expect of them.

[¶13.]     Second, the circuit court concluded that Bankston's habit of hugging did not constitute a violation of New Angus' harassment policy. Noting the definition of harassment contained in the company handbook and this Court's articulation of what is considered a "hostile work environment," the circuit court reasoned that although it could not "conclude that the [ALJ]'s finding that Bankston's hugging of Sturdevant made her *uncomfortable* is clearly erroneous, uncomfortabl[e] in the workplace does not meet the standard of a[n] 'intimidating, hostile, or offensive work environment.'" In short, the circuit court concluded that Bankston's conduct did not meet the company's definition of harassment.

[¶14.]     Third, the circuit court concluded that even if Bankston's habit of hugging violated the harassment policy, it constituted a "good faith error in judgment," which does not constitute misconduct under SDCL 61-6-14.1. Because

Bankston was never warned about how the harassment policy applied to hugging, either by New Angus or Sturdevant, the circuit court reasoned that it could not constitute misconduct "as [Bankston] was without the information and facts necessary to make an appropriate decision."

[¶15.] New Angus and the RA division appeal the circuit court's decision that Bankston was not discharged for misconduct and was qualified to receive reemployment benefits.

## Standard of Review

[¶16.] "We review administrative decisions in the same manner as the circuit court. Factual findings can be overturned only if we find them to be 'clearly erroneous' after considering all the evidence." *Abild v. Gateway 2000, Inc.*, 1996 S.D. 50, ¶ 6, 547 N.W.2d 556, 558 (citing SDCL 1-26-36). "The question is not whether there is substantial evidence contrary to the findings, but whether there is substantial evidence to support them." *Id.* "The findings will not be disturbed unless we are left with a definite and firm conviction a mistake has been made." *Weeks v. Valley Bank*, 2000 S.D. 104, ¶ 8, 615 N.W.2d 179, 182 (citing *Sopko v. C & R Transfer Co., Inc.*, 1998 S.D. 8, ¶ 7, 575 N.W.2d 225, 229).

[¶17.] "Conclusions of law and mixed questions of fact and law that require the application of a legal standard are fully reviewable." *Jorenby v. S.D. Dept. of Lab.*, 2003 S.D. 76, ¶ 5, 666 N.W.2d 461, 462 (citing *Weeks*, 2000 S.D. 104, ¶ 8, 615 N.W.2d at 182). "Whether an individual has been discharged from employment for misconduct that disqualifies him from receiving [reemployment assistance] benefits is a question of law, and is, therefore, fully reviewable by this Court." *Wernke v.*

*State, Dept. of Soc. Servs.*, 1999 S.D. 32, ¶ 4, 590 N.W.2d 260, 262 (citing *Rasmussen v. S.D. Dept. of Lab.*, 510 N.W.2d 655, 657 (S.D. 1993)).

## Decision

[¶18.] When presented with an administrative appeal, the circuit court can reverse or modify the agency decision where the appellant's substantial rights have been prejudiced under one of six specific circumstances.[4] The circuit court also has the authority to "affirm the decision of the agency or *remand the case for further proceedings.*" SDCL 1-26-36 (emphasis added). Because this Court conducts "the same review of the administrative tribunal's action as did the circuit court[,]" we may affirm, reverse, or remand the matter. *See Dakota Trailer Mfg. Inc., v. United Fire & Cas. Co.*, 2015 S.D. 55, ¶ 11, 866 N.W.2d 545, 548 (quoting *Peterson v.*

---

4.      SDCL 1-26-36 provides:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Affected by other error of law;
> > (5) Clearly erroneous in light of the entire evidence in the record; or
> > (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15-17.

*Evangelical Lutheran Good Samaritan Soc.*, 2012 S.D. 52, ¶ 13, 816 N.W.2d 843, 847).

[¶19.]     The ALJ's finding that Bankston "had a habit of hugging other employees" was not clearly erroneous because it was supported by substantial evidence. However, the ALJ's finding regarding COVID-19 was clearly erroneous because it was not supported by any evidence. As the circuit court pointed out, the ALJ "received no evidence that [New Angus] discouraged physical contact due to the COVID-19 pandemic, and neither party argued that [New Angus] spoke to its employees about the COVID-19 pandemic[.]"

[¶20.]     New Angus presented evidence which, if believed by the finder of fact, could support its claim that Bankston's conduct included inappropriate verbal or physical conduct of a sexual nature that would create an offensive or hostile work atmosphere. Sturdevant's testimony alleged conduct far beyond a friendly hug among coworkers. She testified that Bankston kissed her, reached under her coat during hugs, and made sexually suggestive comments. Bankston denied each of these allegations. "It is the Department's responsibility to judge the credibility of witnesses and choose between conflicting versions." *Weeks*, 2000 S.D. 104, ¶ 12, 615 N.W.2d at 183 (citing *Wagaman v. Sioux Falls Constr.*, 1998 S.D. 27, ¶ 29, 576 N.W.2d 237, 242–43). Because the ALJ did not address these pivotal allegations, it is impossible to ascertain how the ALJ perceived the credibility of the various witnesses or how he resolved these specific factual disputes.

[¶21.]     Meaningful appellate review requires adequate findings of fact. *See AgFirst Farmers Co-op. v. Diamond C Dairy, LLC*, 2013 S.D. 19, ¶ 13, 827 N.W.2d

843, 847. Where there are inadequate findings to allow the appellate court to conduct a meaningful review, it is appropriate to remand the matter for entry of such findings. *See Michlitsch v. Meyer*, 1999 S.D. 69, ¶ 20, 594 N.W.2d 731, 735.

[¶22.] "[F]indings must be entered 'with sufficient specificity to permit meaningful review.'" *Luze v. New FB Co.*, 2020 S.D. 70, ¶ 26, 952 N.W.2d 264, 272 (quoting *AgFirst Farmers Co-op.*, 2013 S.D. 19, ¶ 13, 827 N.W.2d at 846). Because the ALJ failed to make findings on these central factual disputes, it appears the circuit court felt its appellate review was confined to the lone factual finding the ALJ actually made—Bankston's hugging. However, given the ALJ's corresponding finding that Sturdevant "credibly testified that it made her feel uncomfortable," it is not so apparent to this Court that the absence of more detailed findings necessarily means the ALJ determined Sturdevant's testimony about the other allegations was not credible. This is particularly unclear given the overall sparsity of the ALJ's findings.

[¶23.] This Court faces the same appellate review dilemma as the circuit court. First, there are no factual findings about the alleged verbal and physical sexual conduct that New Angus asserted as grounds for discharging Bankston. Second, "[w]ithout findings of fact, there is no way to determine the basis for the [circuit] court's conclusions . . . *or whether [any] findings were clearly erroneous.*" *Id.* (alterations and omission in original). Because the ALJ failed to enter findings on the alleged sexual conduct and words, we cannot conduct a meaningful appellate review. *See Ridley v. Lawrence Cnty. Comm'n*, 2000 S.D. 143, ¶ 13, 619 N.W.2d 254, 259 ("Without findings of fact and conclusions of law on this issue, meaningful

appellate review is compromised."); S*tate Dept. of Pub. Safety v. Eastman*, 273 N.W.2d 159, 161 (S.D. 1978) ("The court cannot 'affirm, modify or reverse the findings and conclusions entered by the agency' when there are none.") (footnote omitted) (quoting SDCL 1-26-36). The ALJ was better positioned to judge the credibility of the witnesses, and additional findings would allow a thorough and meaningful appellate review.

[¶24.] Accordingly, we reverse the circuit court's order of reversal and remand with the direction that the circuit court remand the matter to the ALJ to utilize the existing record to issue a new proposed decision that contains sufficient factual findings to enable meaningful appellate review. Once the DOL issues its final renewed decision, either party may appeal through ordinary means.

[¶25.] JENSEN, Chief Justice, and KERN and DEVANEY, Justices, concur.

[¶26.] SALTER, Justice, who deemed himself disqualified, did not participate.